**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee*,

v.

ROGER WILLIAM CAMPBELL II, AKA
Roger William Campbell,
            *Defendant-Appellant.*

No. 17-10561

D.C. No.
2:09-cr-01297-
SRB-1

OPINION

Appeal from the United States District Court
for the District of Arizona
Susan R. Bolton, District Judge, Presiding

Argued and Submitted September 12, 2018
San Francisco, California

Filed September 11, 2019

Before:  Marsha S. Berzon, Johnnie B. Rawlinson,
and Paul J. Watford, Circuit Judges.

Opinion by Judge Rawlinson;
Dubitante opinion by Judge Berzon

# SUMMARY*

## Criminal Law

Affirming a sentence imposed upon revocation of multiple supervised release terms, the panel held that neither the negative pregnant principle nor the rule of lenity deprives a sentencing court of its discretionary authority under 18 U.S.C. § 3584(a) to impose consecutive terms of imprisonment following revocation of concurrent supervised release terms.

The panel held because the district court acted within its discretion in imposing consecutive sentences, no plain error occurred.

Dubitante, Judge Berzon wrote to encourage the U.S. Sentencing Commission to resolve the anomaly in the Sentencing Guidelines, which are far from lucid in this scenario in which the district court turned the defendant's single violation of the conditions of his concurrent supervised release terms into multiple, consecutive terms of confinement, resulting in a prison sentence that is longer than the original term of imprisonment.

---

* This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Daniel L. Kaplan (argued), Assistant Federal Public Defender; Jon M. Sands, Federal Public Defender; Office of the Federal Public Defender, Phoenix, Arizona; for Defendant-Appellant.

Caitlin B. Noel (argued), Assistant United States Attorney; Krissa M. Lanham, Deputy Appellate Chief; Elizabeth A. Strange, First Assistant United States Attorney; United States Attorney's Office, Phoenix, Arizona; for Plaintiff-Appellee.

**OPINION**

RAWLINSON, Circuit Judge:

We must decide whether the district court committed plain error by imposing consecutive prison terms following revocation of multiple supervised release terms. Because we conclude that Chapter 7 of the United States Sentencing Guidelines (Guidelines) does not preclude the imposition of consecutive sentences under these circumstances, we affirm the judgment of the district court.

## I.  BACKGROUND

While working for American Express, defendant Roger William Campbell (Campbell) defrauded a supplier by identifying certain parts covered by the contract between the supplier and American Express as defective, and ordering replacement parts from the supplier.  Rather than returning the "defective" parts to the supplier upon receipt of the replacement parts, Campbell sold the replacement parts to

third parties. Following a guilty plea, Campbell was convicted of 35 counts of mail fraud. The district court sentenced Campbell to 35 concurrent 24-month prison terms followed by 35 concurrent three-year supervised release terms. The court also imposed a special assessment of $3,400 with restitution in the amount of $857,616. After Campbell began serving his supervised release term, Campbell's probation officer reported that Campbell failed to perform community service, pay restitution, submit financial reports, or remain in contact.

In August, 2015, Campbell's probation officer filed a petition to revoke supervised release, and requested a warrant for Campbell's arrest, which the district court issued. After his arrest in 2017, Campbell admitted to a Grade C violation of his supervised release for failing to contact his probation officer.

The probation officer calculated Campbell's sentencing range as three to nine months' imprisonment under Chapter 7 of the Guidelines. At the disposition hearing, the probation officer recommended a sentence of 30 months' imprisonment for five counts (five consecutive six-month terms) and 30 concurrent one-day terms for 30 counts. The probation officer recommended two concurrent terms of supervised release: (1) 30 months for each of five counts, and (2) 35 months and 29 days for each of 30 counts. The government concurred with the probation officer's recommendation.

Campbell's counsel requested the court to "consider a sentence within the policy statement, . . . within the three to nine months range." The district court responded that the recommended sentence was "actually within the policy

statement[;] it's just consecutive." The district court ultimately imposed sentences of 25 months' imprisonment (consecutive five-month terms for each of five counts) and 30 concurrent one-day terms for each of thirty counts, to run concurrently with the 25-month sentence. The district court imposed two concurrent supervised release terms: (1) a 31-month term for each of five counts, and (2) a 35-month-and-one-day term for each of 30 counts. Campbell timely appealed.

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291. "We review a sentence imposed on revocation of supervised release under the *Booker*[1] reasonableness standard. . . ." *United States v. Montes-Ruiz*, 745 F.3d 1286, 1289 (9th Cir. 2014) (citation and internal quotation marks omitted). We review de novo the district court's interpretation of the Guidelines, and the district court's factual findings for clear error. *See United States v. Gasca-Ruiz*, 852 F.3d 1167, 1170 (9th Cir. 2017) (en banc).

Generally, we review the district court's application of the Guidelines for abuse of discretion. *See id.* However, when a defendant does not raise an objection to his sentence before the district court, we apply plain error review. *See United States v. Gallegos*, 613 F.3d 1211, 1213 (9th Cir. 2010). Although Campbell requested the district court to consider imposing a concurrent sentence, he raised no objection to the actual sentence imposed. A request to consider a position does not equate to an objection. *See id.* (applying plain error

---

[1] *United States v. Booker*, 543 U.S. 220, 247 (2005).

review when defendant requested a concurrent sentence but raised no objection to the sentence imposed).

"Plain error is (1) error, (2) that is plain, and (3) that affects substantial rights.  If these three conditions are met, we may then exercise [our] discretion to grant relief if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings."  *United States v. Hammons*, 558 F.3d 1100, 1103 (9th Cir. 2009) (citations and internal quotation marks omitted).

## III.    DISCUSSION

We have previously held that 18 U.S.C. § 3584(a) (§ 3584(a)) confers discretion to impose consecutive or concurrent imprisonment terms upon revocation of concurrent supervised release terms.  *See* 18 U.S.C. § 3584(a) ("If multiple terms of imprisonment are imposed on a defendant at the same time, . . . the terms may run concurrently or consecutively . . ."); *see also United States v. Jackson*, 176 F.3d 1175, 1178–79 (9th Cir. 1999) (per curiam) (relying upon the language of § 3624 to impose consecutive terms of imprisonment following the revocation of concurrent supervised release terms); *United States v. Xinidakis*, 598 F.3d 1213, 1217 (9th Cir. 2010) (citing *Jackson* in reaching the same conclusion).  Taking a different approach, Campbell argues that Chapter 7 mandates the imposition of concurrent imprisonment terms upon revocation of concurrent supervised release terms.  Campbell specifically relies upon the "negative pregnant rule" and the "rule of lenity" to shape his argument that Chapter 7 of the Guidelines precludes the imposition of consecutive terms of imprisonment following revocation of supervised release involving concurrent terms of supervised release.

Campbell describes the "negative pregnant rule" as embodying a principle from the Supreme Court decision in *Russello v. United States*, 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion. . . .") (citations and alteration omitted).

Notwithstanding that § 3584(a) explicitly provides that terms of imprisonment may run concurrently or consecutively, Campbell seeks to apply the negative pregnant rule to Chapter 7 of the Guidelines. Campbell asserts that because other provisions of Chapter 7 expressly provide for consecutive sentences upon revocation of supervised release, the absence of an express provision for consecutive sentencing upon revocation of multiple concurrent supervised release terms militates against the availability of such a sentence.

Although we have not previously addressed this precise issue, two of our sister circuits have rejected Campbell's argument predicated on the negative pregnant rule. In *United States v. Quinones*, 136 F.3d 1293 (11th Cir. 1998), the Eleventh Circuit noted that § 3584(a) "permits a court to order multiple terms to run consecutively." *Id.* at 1294 (footnote reference omitted). The court was not persuaded that the lack of a policy statement in Chapter 7 regarding "concurrence or consecutiveness" altered the court's discretion. *Id.* at 1295. Rather the court concluded that "this silence [on concurrence or consecutiveness] leaves intact the district court's statutory discretion." *Id.*

The Fifth Circuit has ruled similarly on this issue. In *United States v. Gonzalez*, 250 F.3d 923 (5th Cir. 2001), the defendant argued that "consecutive prison sentences after revocation of concurrent terms of supervised release" should be precluded. *Id.* at 926. Relying on the Eleventh Circuit's decision in *Quinones*, the Fifth Circuit "reject[ed] Gonzalez's contention that the policy statements in chapter seven of the Sentencing Guidelines should be read to preclude consecutive sentencing." *Id.* at 929 n.8 (citing *Quinones*, 136 F.3d at 1295); *see also United States v. Johnson*, 138 F.3d 115, 118 (4th Cir. 1998) (rejecting the argument that Chapter 7 does not "authorize consecutive sentences for simultaneous violations of supervised release") (internal quotation marks omitted); *United States v. Cotroneo*, 89 F.3d 510, 513 (8th Cir. 1996) (concluding in the context of revocation of concurrent supervised release terms that "the District Court retains discretion to impose either concurrent or consecutive sentences after revocation of a defendant's supervised release").

Campbell's reliance on the rule of lenity fares no better. Campbell urges us to resort to the rule of lenity to interpret "Chapter 7's silence-and thus, ambiguity-on the question of consecutive sentencing in this context as a recommendation *against* such a practice." (emphasis in the original). However, we have defined ambiguity for the purpose of applying the rule of lenity as a "grievous" lack of clarity even after applying all interpretive aids to construe the language of the Guidelines. *United States v. D.M.*, 869 F.3d 1133, 1144 (9th Cir. 2017); *see also United States v. Kelly*, 874 F.3d 1037, 1049 (9th Cir. 2017). Our analysis of Chapter 7 of the Guidelines is significantly advanced by the ultimate interpretive aid-the governing statute, which specifically bestows discretion upon the sentencing court to impose

consecutive sentences when multiple sentences are under consideration. *See* 18 U.S.C. § 3584(a) ("If multiple terms of imprisonment are imposed on a defendant at the same time, . . . the terms my run concurrently or consecutively . . ."). Contrary to Campbell's position that silence in Chapter 7 regarding consecutive sentences creates ambiguity triggering the rule of lenity, we agree with the Fifth and Eleventh Circuits that in the absence of a specific policy statement in Chapter 7, we revert to the statutory provision conferring discretion on the sentencing court. *See Quinones*, 136 F.3d at 1295 ("Those [Chapter 7] policy statements . . . say nothing about concurrence or consecutiveness. This silence leaves intact the district court's statutory discretion."); *see also Gonzalez*, 250 F.3d at 929 n.8 (same).

In sum, neither the negative pregnant principle nor the rule of lenity served to deprive the district court of its discretionary authority under § 3584(a) to impose consecutive terms of imprisonment following revocation of concurrent supervised release terms. *See Jackson*, 176 F.3d at 1176, 1178. To hold otherwise would not only undermine our prior precedent, but would create an unwarranted circuit split. *See Kelton Arms Condo. Owners Ass'n v. Homestead Ins. Co.*, 346 F.3d 1190, 1192 (9th Cir. 2003) ("[W]e decline to create a circuit split unless there is a compelling reason to do so. . . .") (citation omitted).

## IV. CONCLUSION

The district court acted within the discretion conferred upon it by 18 U.S.C. § 3584(a) when it imposed consecutive terms of imprisonment following revocation of multiple supervised release terms. We agree with our sister circuits that neither the negative pregnant rule nor the rule of lenity

deprives the sentencing court of the discretion set forth in the statute. The absence of a concurrent/consecutive sentencing provision in Chapter 7 of the Guidelines results in reversion to the statutory provision, which expressly provides that multiple sentences may be imposed to run consecutively or concurrently. Because the district court acted within its discretion in imposing consecutive sentences, no plain error occurred. The judgment of the district court is **AFFIRMED**.

BERZON, Circuit Judge, dubitante:

Today's result is baffling. Roger William Campbell was initially sentenced to *concurrent* terms of imprisonment and supervised release.[1] After he admitted to a *single* violation of the terms of that supervised release, the district court revoked his supervised release and sentenced him to *consecutive* terms of imprisonment. The result was that Campbell's prison sentence was longer for the revocation than his original sentence and could have been much longer as the majority opinion interprets the U.S. Sentencing Guidelines. The majority now approves that revocation sentence and the interpretation of the Guidelines on which it was based. I believe the imposition of consecutive sentences in this instance is incompatible with both the purposes and the practicalities of supervised release. But, as I explain below,

---

[1] Campbell's terms of supervised release were required by statute to run concurrently. *See* 18 U.S.C. § 3624(e) ("The term of supervised release commences on the day the person is released from imprisonment and runs concurrently with any Federal, State, or local term of probation or supervised release or parole for another offense to which the person is subject or becomes subject during the term of supervised release.").

the fault for this troubling outcome lies principally not with my colleagues but with the Guidelines, which are far from lucid on this point. I therefore write specifically to encourage the U.S. Sentencing Commission to resolve this anomaly.

# I

By design, supervised release serves a unique purpose in our criminal justice system. *See Gozlon-Peretz v. United States*, 498 U.S. 395, 408 (1991); Fiona Doherty, Indeterminate Sentencing Returns: The Invention of Supervised Release, 88 N.Y.U. L. Rev. 958 (2013) (chronicling the origins and purposes of supervised release). In essence, supervised release establishes what should be a simple bargain: After serving a prison sentence, an individual goes free in exchange for agreeing to abide by a set of conditions—some established by statute, others left to the discretion of the district court. *See* 18 U.S.C. § 3583(d). When an individual violates one or more conditions of his supervised release, the district court may revoke supervised release and impose a prison sentence, to "sanction primarily the defendant's breach of trust." U.S. Sentencing Guidelines Manual ("U.S.S.G.") Ch. 7, pt. A(3)(b); *see United States v. Miqbel*, 444 F.3d 1173, 1181–82 (9th Cir. 2006) (noting the differences between 18 U.S.C. § 3553(a), which establishes ten factors to be considered at sentencing, and 18 U.S.C. § 3583(e), which incorporates eight of those factors for revocation sentencing).[2]

---

[2] *Miqbel* emphasized the difference between the original sentencing inquiry and revocation sentencing inquiry and concluded that, at a revocation sentencing, a court "may not punish [a defendant] for the [new] criminal conduct underlying the revocation" and "may not . . . consider a need to promote respect for the law, based on the nature of the underlying

Here, Campbell admitted to violating a single condition of his supervised release: he failed to maintain contact with his probation officer.[3] This condition, like all twenty-five conditions set by the district court at Campbell's initial sentencing, applied to each of the thirty-five concurrent terms of supervised release imposed as a part of Campbell's original sentence. *See* 18 U.S.C. § 3624(e). Following Campbell's violation, the district court determined that it had the discretion to impose consecutive revocation sentences for *each* of the thirty-five terms of Campbell's supervised release, ultimately sentencing Campbell to twenty-five months in prison. That sentence was a month and a day *longer* than Campbell's original prison sentence, but 290 months *shorter* than the court could have imposed had it adopted the maximum sentence recommended by the Guidelines for each of the 35 concurrent terms of supervised release. *See* U.S.S.G. § 7B1.4(a).

I find it inexplicable that the district court could have the discretion to turn Campbell's single violation of the conditions of his concurrent supervised release terms into multiple, consecutive terms of confinement, potentially much, much longer than the original term of imprisonment. The district court stacked Campbell's concurrent terms of supervised release. But Campbell did not violate a *term* of supervised release—he violated a single *condition* of

---

criminal offense committed," as a court could at a sentencing hearing. 444 F.3d at 1182 (citation and internal quotation marks omitted).

[3] As the majority notes, Campbell's probation officer initially reported him for four violations of the conditions of his supervised release, but he admitted to, and the district court ultimately sanctioned him for, only one of those violations.

supervised release imposed for each term. That is, there was one violation, not thirty-five. And so, although Campbell's violation was serious, Campbell did not breach the court's trust thirty-five times, once for each term the district court revoked. He breached it once. Punishing Campbell with consecutive revocation sentences is detached from the reality and purpose of supervised release, which aims, in effect, to have Campbell behave by conforming to his conditions of supervised release—not to have him behave thirty-five times over.

## II

The problem is that the Guidelines are completely opaque about whether they sanction the mode of calculation of the Guidelines' recommended sentence that the district court used here. As the parties agree, the Guidelines do not expressly state, one way or the other, whether a defendant can be sentenced to consecutive terms for violating a condition of concurrent supervision terms. *See United States v. Quinones*, 136 F.3d 1293, 1295 (11th Cir. 1998) ("[The Guidelines'] policy statements, however, say nothing about concurrence or consecutiveness. This silence leaves intact the district court's statutory discretion.").

Inferring an answer from what the Guidelines do say fares no better. On the one hand, portions of the Guidelines suggest that revocation sentences are to be imposed per condition violated, not "term" imposed. In discussing revocation, the Guidelines refer to *conduct* that gives rise to revocation. The Guidelines explicitly spell out that "[w]here there is more than one violation of the conditions of supervision, or the violation includes *conduct* that constitutes more than one offense, the grade of the violation is determined by the

violation having the most serious grade." U.S.S.G. § 7B1.1(b) (emphasis added). The Guidelines' recommendations for revocation sentences are then encapsulated in a chart in which the x-axis corresponds to the defendant's criminal history and the y-axis to the "grade of violation" of the offense triggering the revocation. § 7B1.4; *see* Appendix. Each of the three grades of violation is defined as "*conduct* constituting" a particular type of offense, § 7B1.1(a) (emphasis added); Campbell's violation, for example, was a Grade C violation, defined as "conduct constituting . . . a violation of any . . . condition of supervision." *Id.*; s*ee also* § 7B1.1, cmt. n.1 ("[T]he grade of the violation is to be based on the defendant's actual conduct."). There is no mention of correlating the period of imprisonment with the number of terms of supervised release imposed, and the repeated references to "conduct" confirm that there is only a single violation when there is only a single course of action that breaches a condition of supervised release, as there was here.

On the other hand, though, the statute governing revocation does, as we and other courts have interpreted it, grant district courts discretion to turn concurrent terms of supervised release into consecutive terms of imprisonment. *U.S. v. Xinidakis*, 598 F.3d 1213, 1217 (9th Cir. 2010); *U.S. v. Jackson*, 176 F.3d 1175 (9th Cir. 1999) (per curiam); *Quinones*, 136 F.3d at 1295. When a district court imposes "multiple terms of imprisonment," 18 U.S.C. § 3584(a) gives the court the discretion to run those terms concurrently or consecutively. *See Jackson*, 176 F.3d at 1177–78. *Jackson* and *Xinidakis* hold that this discretion applies to imprisonment on account of supervised release. *Xinidakis*, 598 F.3d at 1215–1217; *Jackson*, 176 F.3d at 1177–78. The statute, though, sets only the outer bounds for the Guidelines. The Guidelines would certainly fall within those statutory

bounds by recommending only a single sentence for a violation of a condition of supervised release, no matter how many concurrent terms of supervised release a defendant is serving. Still, one would expect the Guidelines to be specific if the intent was to recommend against consecutive terms even though they are allowed by the statute.

Moreover, the Guidelines themselves refer frequently to the "term" of supervised release as the unit of measurement for revocation. *See* U.S.S.G. § 7B1.3(a)(2) ("Upon a finding of a Grade C violation, the court may . . . extend the term of probation or supervised release."); §7B1.3(c)(2) ("Where the minimum term of imprisonment determined under §7B1.4 . . . is more than six months but not more than ten months, the minimum term may be satisfied by . . . a sentence of imprisonment . . . ."). Also, the Guidelines' commentary notes that "[t]he provisions for the revocation, as well as early termination and extension, of a term of supervised release are found in 18 U.S.C. 3583(e), (g)–(i)." §7B1.3, cmt. n.2.

Of course, a "term of supervised release" would seem, in ordinary English, to mean the actual time period a defendant is to be supervised. But *Jackson* and *Xinidakis* rested on the view that a "term of supervised release" is, instead, an abstraction—the supervised release prescription for each underlying offense, however long the defendant is actually to be supervised.[4] The Guidelines' use of "term" is consistent with that understanding.

Despite this lack of clarity, I very much doubt, in light of supervised release's role in our criminal justice system, that

---

[4] I note that I find that abstract understanding highly debatable in the context of mandatory concurrent supervised release sentences.

the Sentencing Commission meant to recommend revocation sentences measured by the number of "terms of supervised release" rather than by the violations of the uniform conditions of supervised release and the nature of the underlying offense. The Sentencing Commission, which promulgates the Sentencing Guidelines, has underscored that "it views the guideline-writing process as evolutionary." Sentencing Guidelines, Ch. 1, pt. A; Ch. 7 pt. A. Yet, I have seen no indication that the Commission has confronted this anomaly. On this matter, the time to evolve is now.

# APPENDIX: Sentencing Guidelines, §7B1.4

## Revocation Table
### (in months of imprisonment)

| Grade of Violation | | Criminal History Category* | | | | | |
|---|---|---|---|---|---|---|---|
| | | I | II | III | IV | V | VI |
| Grade C | | 3-9 | 4-10 | 5-11 | 6-12 | 7-13 | 8-14 |
| Grade B | | 4-10 | 6-12 | 8-14 | 12-18 | 18-24 | 21-27 |
| Grade A | (1) | Except as provided in subdivision (2) below: | | | | | |
| | | 12-18 | 15-21 | 18-24 | 24-30 | 30-37 | 33-41 |
| | (2) | Where the defendant was on probation or supervised release as a result of a sentence for a Class A felony: | | | | | |
| | | 24-30 | 27-33 | 30-37 | 37-46 | 46-57 | 51-63. |

*The criminal history category is the category applicable at the time the defendant originally was sentenced to a term of supervision.