# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued October 13, 2021   Decided January 4, 2022

No. 21-3005

UNITED STATES OF AMERICA,
APPELLEE

v.

LORENZO TURNER,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:06-cr-00336-1)

*Lisa B. Wright*, Assistant Federal Public Defender, argued the cause for appellant. With her on the briefs was *A. J. Kramer*, Federal Public Defender. *Tony Axam Jr.,* Assistant Federal Public Defender, entered an appearance.

*Chimnomnso N. Kalu*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Chrisellen R. Kolb* and *John P. Mannarino*, Assistant U.S. Attorneys.

Before: HENDERSON and TATEL, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* TATEL.

2

Dissenting opinion by *Circuit Judge* HENDERSON.

TATEL, *Circuit Judge*: Lorenzo Turner pled guilty to two criminal counts and was placed on supervised release following his prison sentence. The question in this appeal is what the Sentencing Guidelines, which set forth a sentencing range based on the severity of the violation and the defendant's criminal history, recommend when a defendant like Turner violates the terms of his supervision. The district court concluded that the Guidelines range applies separately to each count for which Turner was serving supervised release and so imposed separate nine-month sentences for each of those counts. Challenging his sentence, Turner contends that the Guidelines range denotes the total recommended punishment for his violation without regard to the number of counts. Because we agree with Turner, we vacate and remand for resentencing.

**I.**

Eleven years ago, the district court sentenced Turner to prison for possessing cocaine base and a handgun. The court also imposed four years of supervised release on each count to be served concurrently following his custodial sentence. Turner completed his prison term and began his supervised release. Less than four months before his supervision was set to expire, the Probation Office filed a petition alleging that Turner had violated his supervision terms by unlawfully possessing a firearm. Turner admitted the violation.

Probation calculated a Sentencing Guidelines range of six to twelve months' imprisonment based on the violation grade and Turner's criminal history. Using the midpoint of this range, it recommended the court sentence Turner to nine months in prison for each count of his underlying conviction, for a total of eighteen months. Although Turner agreed that

the applicable Guidelines range was six to twelve months, he argued that this range referred to the total punishment for his violation, not a separate punishment for each count for which he was serving supervised release.

At sentencing, the district court said that it would stay "within the guideline range." It agreed with Probation, however, that because Turner was serving supervised release on two counts, this range applied separately for "each of the supervised releases," and it imposed a total sentence of eighteen months over Turner's objection. Because the court had yet to receive written submissions on the issue, it held the sentence in abeyance pending further briefing. In his brief, Turner argued that "[t]he guideline range for a supervised release violation for someone with Mr. Turner's criminal history is 6 to 12 months" and "[t]here is nothing in the guidelines that suggests that one violation (here the conviction for possession of a firearm) should be punished twice because the original conviction included multiple counts." The government argued that the Guidelines range applied separately for each count and continued to seek an eighteen-month sentence.

Probation reconsidered its position in light of Turner's brief and revised its recommendation to "a concurrent sentence of 12 months." Unpersuaded, the district court concluded that an eighteen-month sentence composed of two consecutive nine-month terms was consistent with the Sentencing Guidelines and entered judgment to that effect.

Contending that the district court misunderstood the applicable Guidelines range, Turner now urges us to set aside his sentence as procedurally defective.

4

## II.

Congress enacted the Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1837, to "provide certainty and fairness" in sentencing and to "avoid[] unwarranted sentencing disparities among defendants with similar records . . . while maintaining sufficient flexibility to permit individualized sentences." 28 U.S.C. § 991(b)(1). To this end, the Act established the United States Sentencing Commission to promulgate sentencing guidelines that account for the severity of a defendant's offense conduct and the defendant's personal characteristics. *Mistretta v. United States*, 488 U.S. 361, 375–76 (1989). In *United States v. Booker*, the Supreme Court held that the Federal Sentencing Guidelines are only "advisory." 543 U.S. 220, 245 (2005). Sentencing courts "must nonetheless 'begin all sentencing proceedings by correctly calculating the applicable Guidelines range.'" *United States v. Brown*, 892 F.3d 385, 399 (D.C. Cir. 2018) (per curiam) (quoting *Gall v. United States*, 552 U.S. 38, 49 (2007)). Thus, although the Guidelines are no longer binding, they remain an important factor that courts "shall consider" before imposing a sentence. 18 U.S.C. § 3553(a).

After *Booker*, our review of a sentence's reasonableness proceeds "in two steps." *United States v. Berkeley*, 567 F.3d 703, 710 (D.C. Cir. 2009). "First, we must 'ensure that the district court committed no significant procedural error, such as . . . improperly calculating . . . the Guidelines range [or] treating the Guidelines as mandatory.' Second, we 'consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard.'" *Id.* (alterations in original and internal citations omitted) (quoting *Gall*, 552 U.S. at 51). Turner challenges only the procedural propriety of his sentence—that is, whether the district court correctly calculated and considered the Guidelines range for his

violation. "We review *de novo* the district court's interpretation of the Sentencing Guidelines in calculating a defendant's Sentencing Guidelines range." *Brown*, 892 F.3d at 401.

**A.**

Consistent with the Commission's statutory mandate to promote fairness and uniformity in sentencing, the Guidelines provide recommended sentencing ranges based on two factors: a defendant's culpable conduct and criminal history. Chapter 7 of the Guidelines sets out recommended terms of imprisonment upon revocation of supervised release. These penalties seek to sanction a defendant's "breach of trust" in violating the conditions of supervision. U.S.S.G., ch. 7, pt. A, intro. cmt. 3(b). To calculate the Guidelines range for a supervised release violation, the court first determines the grade of violation based on the severity of the violation conduct. U.S.S.G. § 7B1.1. If a defendant has engaged in more than one violation, the court determines a single violation grade based on the most serious one. U.S.S.G. § 7B1.1(b). The court then calculates the recommended term of imprisonment based on the Revocation Table. U.S.S.G. § 7B1.4. That table dictates a sentencing range based on the violation grade and the defendant's criminal history.

Chapter 7's text makes clear that the sentencing ranges in the Revocation Table represent the total recommended punishment for a supervised release violation regardless of the number of underlying counts. The Revocation Table instructs courts to determine a sentence based on only two variables: the "grade of violation" and the "criminal history category." U.S.S.G. § 7B1.4. The grade of violation depends on the "conduct constituting" the violation, not the number of counts for which a defendant is on supervised release. U.S.S.G.

§ 7B1.1; *see also* § 7B1.1 cmt. n.1 ("[T]he grade of the violation is to be based on the defendant's actual conduct."). The criminal history category is "determined at the time the defendant originally was sentenced to the term of supervision." U.S.S.G. § 7B1.4 cmt. n.1. The government's position—that courts should consider another variable unmentioned in the Revocation Table—lacks any textual basis in the Guidelines. That interpretation is particularly implausible given its sweeping implications: calculating separate sentencing ranges for each count could multiply a defendant's recommended sentence many times over. Had the Commission intended its recommended sentences to vary so wildly based on the number of underlying counts, we expect it would have clearly said so.

The government's "per count" interpretation of the Revocation Table is also at odds with other language in Chapter 7. The Guidelines recommend a single punishment based on a defendant's most serious violation, directing that "[w]here there is more than one violation of the conditions of supervision, . . . the grade of the violation is determined by the violation having the most serious grade." U.S.S.G. § 7B1.1(b). Chapter 7 thus speaks in terms of total punishment, not separate punishments for separate offenses. The government offers no reason why we should read Chapter 7 to recommend a single punishment for all violative conduct but separate punishments for each underlying count of a defendant's prior conviction.

Based on this language, we conclude that the sentencing ranges in the Revocation Table refer to a defendant's total recommended punishment. The Guidelines' structure and purpose reinforce this conclusion.

We begin with structure. The Commission's approach to sentencing on multiple counts in other contexts follows the "total punishment" model. When a court imposes a sentence following criminal conviction, the Guidelines direct that it calculate a single offense level for the defendant's culpable conduct. U.S.S.G. § 3D1.1. The court then "determine[s] the total punishment" for all counts using the Sentencing Table in Chapter 5. U.S.S.G. § 5G1.2(b). The Sentencing Table, like the Revocation Table, dictates a sentencing range based on the total offense level and the defendant's criminal history. U.S.S.G. ch. 5, pt. A. Unless a statute demands otherwise, the court then imposes consecutive sentences "only to the extent necessary to produce a combined sentence equal to the total punishment." U.S.S.G. § 5G1.2(d).

Chapter 7 operates the same way. For both a criminal sentence and revocation of supervised release, the court begins by determining a single measure of the defendant's culpable conduct (the violation grade or total offense level). The court then determines the sentencing range from the Revocation Table based on the violation grade and the defendant's criminal history category. The sentencing ranges in Chapter 7 are most naturally read, like those in the Chapter 5 Sentencing Table, to refer to the total recommended punishment. Turner's interpretation of Chapter 7, unlike the government's, places it "into an harmonious whole" with the rest of the Sentencing Guidelines. *Van Buren v. United States*, 141 S. Ct. 1648, 1658 (2021) (internal quotation marks omitted).

We turn finally to the Guidelines' purpose as expressed in the Commission's policy statements. Acknowledging that the same conduct can often be charged as a different number of counts, "the Commission has written its rules for the treatment of multicount convictions with an eye toward

eliminating unfair treatment that might flow from" a prosecutor's charging decisions. U.S.S.G., ch. 1, pt. A, intro. cmt. 4(a). For example, the Guidelines consider a defendant charged with three counts of stealing $10,000 to be no more culpable than one charged with a single count of stealing $30,000. *Id.*; *see also* § 3D1.3 (aggregating quantities for grouped theft offenses). It defies both logic and the Commission's stated goals to treat one of those defendants three times as harshly for a subsequent supervised release violation when they faced identical sentences on conviction.

Finding consensus among Chapter 7's text, context, and purpose, we hold that the sentencing ranges in Chapter 7's Revocation Table represent the Guidelines' total recommended punishment for supervised release violations. Those recommendations do not depend on the number of counts for which a defendant is serving supervised release.

**B.**

Unsurprisingly, the government offers no argument that the text, structure, or purpose of the Guidelines support its contrary interpretation. Instead, it relies on decisions from other circuits holding that sentencing courts may impose consecutive sentences when revoking concurrent terms of supervised release. *See, e.g.*, *United States v. Badgett*, 957 F.3d 536, 541 n.20 (5th Cir. 2020); *United States v. Campbell*, 937 F.3d 1254, 1258 (9th Cir. 2019). Insofar as these cases have held that the post-*Booker* Guidelines countenance multiple punishments for a single supervised release violation, we respectfully disagree.

The Ninth Circuit's recent decision in *United States v. Campbell*, is illustrative. In that case, the court upheld five consecutive sentences for a defendant on supervised release for thirty-five counts of mail fraud stemming from a single

criminal scheme. According to the panel majority, Chapter 7's "silence . . . regarding consecutive sentences" requires courts to "revert to the statutory provision conferring discretion on the sentencing court." 937 F.3d at 1258. Under the court's reasoning, then, if a defendant's underlying conviction involved thirty-five counts, a sentencing court would act within the Guidelines by imposing thirty-five consecutive sentences for a single violation of supervised release.

Judge Berzon, writing dubitante, called the court's result "baffling." *Id.* at 1259. Campbell's sentences for failing to report to his probation officer (the lowest grade of violation) exceeded his original prison term. *Id.* at 1260. And applying the "per count" interpretation of Chapter 7 that the government urges here, the Guidelines range in that case would have allowed a sentence of an astonishing 315 months—far in excess of the Guidelines maximum for his original fraud conviction. *Id.*; s*ee* U.S.S.G. § 2B1.1 & ch. 5, pt. A (2010). As Judge Berzon put it, "[p]unishing Campbell with consecutive revocation sentences is detached from the reality and purpose of supervised release, which aims, in effect, to have Campbell behave by conforming to his conditions of supervised release—not to have him behave thirty-five times over." *Campbell*, 937 F.3d at 1260. But despite her misgivings, Judge Berzon observed that she was bound by earlier Ninth Circuit cases endorsing the view that consecutive sentences are appropriate when a district court revokes multiple "terms" of supervised release. *Id.* at 1261 & n.4.

Our case law mandates no such result. To the contrary, our court has repeatedly assumed that violations of supervised release should be punished only once, not separately for each count of a defendant's prior conviction. In one case, for example, we found that a district court imposed an above-

Guidelines sentence when it gave a defendant "twice the Guidelines maximum" for a Grade C violation even though the defendant was on supervised release for a two-count conviction. *In re Sealed Case*, 527 F.3d 188, at 192 (D.C. Cir. 2008). We have also found that, in some instances, the erroneous imposition of a concurrent supervised release term is harmless error, a conclusion that would have made little sense if subsequent sentencing for a violation hinged on the number of terms of supervised release imposed. *See United States v. Agramonte*, 276 F.3d 594, 598 (D.C. Cir. 2001) ("We are affirming [the defendant's] concurrent sentence of . . . eight years of supervised release on Count Four. He therefore cannot benefit from a shorter term of . . . supervised release on the other two counts."). Convinced that our instinct in these cases was correct, we decline to follow the Ninth Circuit down its "baffling" path. *Campbell*, 937 F.3d at 1259.

Unlike the government, our dissenting colleague offers a textual defense of the approach taken by the Ninth Circuit. As the dissent explains, the Revocation Table sets out "[t]he range of imprisonment applicable upon revocation." U.S.S.G. 7B1.4(a). Construing the phrase "applicable upon revocation," the dissent then concludes that "what is being revoked . . . is a *term* of supervised release," and so the Revocation Table must recommend separate sentences for each "term" revoked. Dissenting Op. at 3. But the phrase "revocation of a term of supervised release" appears nowhere in the Guidelines. To the contrary, Chapter 7 repeatedly refers to the sentence to be imposed "upon revocation of supervised release," not upon revocation of separate *terms* of supervised release. *See, e.g.*, U.S.S.G. § 7B1.5(b) & ch. 7, intro cmt. 4; *see also* § 7B1.3 ("Upon a finding of a Grade A or B violation, the court shall revoke probation or supervised release. . . . In the case of a revocation of probation or supervised release, the applicable range of imprisonment is

that set forth in [the Revocation Table].”). The dissent points out that a single sentence in the application notes mentions a “term of supervision being revoked,” but that sentence deals only with determining a defendant's criminal history category “[i]n the rare case in which no criminal history category was determined” at the time of sentencing. U.S.S.G. § 7B1.4 cmt. n.1. In our view, the dissent's strained reading of the language introducing the Revocation Table falls far short of overcoming the many other indicia that the Guidelines intend only a single punishment for a single supervised release violation.

## III.

This case is not about a district court's statutory authority to impose consecutive sentences on revocation of supervised release. Both Turner and the government agree that a court may deviate from the Guidelines, including by imposing consecutive sentences that exceed the total recommended punishment, after considering the Guidelines range and the other statutory sentencing factors. This case is about how to calculate that Guidelines range. Because the district court misunderstood the Guidelines to recommend separate punishments for each underlying count rather than a total punishment for Turner's violation, it “improperly calculate[d] the Guidelines range.” *Gall*, 552 U.S. at 51. We therefore vacate Turner's sentence on revocation of supervised release and remand for resentencing consistent with this opinion.

*So ordered.*

KAREN LECRAFT HENDERSON, *Circuit Judge*, dissenting: Lorenzo Turner pleaded guilty to two criminal counts: possessing with intent to distribute five grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(iii) (2006), and possession of a firearm during a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1). The district court sentenced him to consecutive terms of imprisonment and two concurrent terms of supervised release. After his release from prison, he violated the conditions of his supervised release terms and the district court revoked both terms. Because the district court properly determined that the Sentencing Guidelines range applies separately to each revoked term of supervised release, I would affirm the sentence. Accordingly, I respectfully dissent.

## I.

The majority ably recounts the undisputed facts of this case, covering Turner's original federal drug and firearms convictions, his sentence and his subsequent violation of the conditions of his supervised release. Majority Op. at 2–3. In short, after Turner's guilty plea, the district court sentenced him to terms of nine months' imprisonment on the drug possession charge and eleven months' imprisonment on the firearm possession charge to run consecutively, as well as two forty-eight-month terms of supervised release to run concurrently. While on supervised release, he was arrested and pleaded guilty to another firearm offense in Prince George's County, Maryland, which conviction violated the conditions of his supervised release. At Turner's revocation sentence hearing, the district court, after calculating a Guidelines range of six to twelve months for each of the two terms, sentenced him to a term of nine months' imprisonment—to run consecutively—for each supervised release term being revoked for a total of eighteen months' imprisonment.

I highlight, however, a critical portion of Turner's sentencing hearing that the majority mentions only briefly in its telling of the procedural history. After Turner's counsel challenged the district court's revocation sentence, *see* App. 49–52 (also challenging whether consecutive terms of imprisonment can be imposed for the revocation of concurrent terms of supervised release—a challenge not raised on appeal), the court made clear that "the[re] were still two periods of supervised release. It wasn't one; it was two." App. 53. The district judge later emphasized that "[a]s far as I'm concerned, I'm revoking *each* of the supervised releases." App. 56 (emphasis added).

For the reasons below, I believe that the majority's analysis contains several flaws that lead it to an erroneous interpretation of the Guidelines provision at issue. Based on my reading of the revocation sentencing provision's plain language and the context and structure of the Guidelines, individual revocation sentences that fall within the advisory range are consistent with the Guidelines, even if the aggregate sentence falls outside the given range.

## II.

As it should, the majority begins its analysis with the text and structure of § 7B1.4 of the Sentencing Guidelines, which includes a table setting forth the advisory sentencing range upon revocation of supervised release. *See* Majority Op. at 5–7 (citing U.S. SENT'G GUIDELINES MANUAL § 7B1.4 (U.S. SENT'G COMM'N 2018)); *see also United States v. McKeever*, 824 F.3d 1113, 1121 (D.C. Cir. 2016) ("We start with the text and structure of the Guidelines." (quoting *United States v. Chatman*, 986 F.2d 1446, 1450 (D.C. Cir. 1993)). Because the Revocation Table contains only two variables—"Criminal History Category" and "Grade of Violation"—my colleagues

conclude that these, "not the number of counts for which a defendant is on supervised release," are the only factors that a sentencing court may consider in determining the appropriate Guidelines range. Majority Op. at 6 (citing U.S.S.G. § 7B1.4). They add that considering the number of terms of supervised release being revoked—"another variable unmentioned in the Revocation Table—lacks any textual basis in the Guidelines." *Id.* I disagree.

Although they correctly highlight the two variables included in Chapter 7's Revocation Table itself, my colleagues minimize the importance of the language introducing the provision. Section 7B1.4(a) begins: "The range of imprisonment applicable upon revocation is set forth in the following table[.]" U.S.S.G. 7B1.4(a). We ask, then, what is being revoked? The answer, on my reading, is a *term* of supervised release. That multiple terms of supervised release are being served concurrently is immaterial because, as other provisions of the Guidelines make clear, each term of supervised release stands on its own and may be imposed with different sets of conditions. *See* U.S.S.G § 5D1.3(a) (providing mandatory conditions of supervised release regardless of offense); § 5D1.3(b) (providing discretionary conditions of supervised release court "may impose" depending on nature of offense and other considerations). A natural reading of this opening language, to me, means that the Revocation Table is to be applied to each term of supervised release to be revoked. And that is exactly what the district court did here. *See* App. 56 ("As far as I'm concerned, I'm revoking *each* of the supervised releases.") (emphasis added). This interpretation does not require adding a variable to the Revocation Table. It simply takes into consideration the text of the Guidelines provision that precedes—and therefore affects—the Revocation Table.

4

The majority asserts that "revocation of a *term* of supervised release" does not appear anywhere in the Guidelines. Majority Op. at 10 (emphasis added). But close inspection of the commentary attached to § 7B1.4, the very provision at issue here, reveals that it does indeed refer to "the *term* of supervision being revoked" in the context of determining the defendant's criminal history category. U.S.S.G. § 7B1.4 cmt. n.1 (referring to "the *term* of supervision being revoked" (emphasis added)). And although other provisions of Chapter 7 cited by the majority, such as § 7B1.3, refer to the "revocation of supervised release," *see* Majority Op. at 10–11, they also refer to the revocation of a *term* of supervised release, *see, e.g.*, § 7B1.3 cmt. n.2 ("The provisions for the revocation, as well as early termination and extension, of a *term* of supervised release are found in 18 U.S.C. § 3583(e), (g)-(i)." (emphasis added)).

Notwithstanding the majority's conclusion, it makes sense to treat the violation of multiple terms of supervised release differently from multiple violations of a single term of supervised release. *Contra* Majority Op. at 6 (quoting U.S.S.G. § 7B1.1(b) ("Where there is more than one violation of the conditions of supervision, . . . the grade of the violation is determined by the violation having the most serious grade.")). The majority cites Chapter 7's introductory commentary and states that "recommended terms of imprisonment upon revocation of supervised release . . . seek to sanction a defendant's 'breach of trust' in violating the conditions of supervision." Majority Op. at 5 (quoting U.S.S.G., ch 7, pt A., introductory cmt. 3(b)). The "trust," of course, represents society's trust that the defendant will abide by certain conditions in exchange for permitting the defendant to re-enter society. And, again, these conditions may vary depending on the nature of the underlying offense. If the defendant violates multiple conditions of supervision, those violations still

amount to a single breach of trust. But suppose, as here, society imposes multiple sets of conditions on the defendant's re-entry into society because the defendant committed multiple crimes in the first instance. If the defendant violates both sets of conditions—even through a single act—he has committed multiple breaches of trust. This interpretation is consistent with Chapter 7's instruction that "at revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator." U.S.S.G., ch 7, pt A., introductory cmt. 3(b).

The majority also examines the Guidelines' structure and context. Majority Op. at 7. It highlights that the Guidelines direct a court sentencing a defendant on multiple counts to first "calculate a single offense level for the defendant's culpable conduct," *id.* at 7 (citing U.S.S.G. § 3D1.1), and then determine "'the total punishment' for all counts using" Chapter 5's Sentencing Table, *id.* (quoting U.S.S.G. § 5G1.2(b)). So far, so good. The majority then asserts that "[t]he sentencing ranges in Chapter 7 are most naturally read, like those in the Chapter 5 Sentencing Table, to refer to the total recommended punishment." *Id.* Once again, I disagree.

As Government counsel explained at oral argument, Chapter 7 of the Sentencing Guidelines neither contains the term "total punishment" nor refers to other provisions of the Guidelines that do.[1] Transcript of Oral Argument at 18, *United States v. Turner* (No. 21-3005). Section 5G1.2 ("Sentencing on Multiple Counts of Conviction"), on the other hand, and its commentary use the term twenty-two times. *See* U.S.S.G. § 5G1.2. Later, during oral argument, Government counsel stated that "Chapter 7 does not set forth the same sorts of

---

[1] The majority does not dispute that "total punishment" appears nowhere in the text of Chapter 7.

strictures and rules that are found in Chapter 5."[2] Transcript of Oral Argument at 24, *United States v. Turner* (No. 21-3005). It is unclear to me why, as the majority suggests, Majority Op. at 7, we should read into Chapter 7 a "total punishment" model like that in Chapter 5 when the latter uses the term repeatedly and the former does not. In fact, the conspicuous absence of "total punishment" leads me to precisely the opposition conclusion—that the Commission intended for the "total punishment" model to apply to Chapter 5 but not to Chapter 7. As my colleagues noted in another context, if the Sentencing Commission intended the "total punishment" model to apply to Chapters 5 and 7, I "expect it would have clearly said so." Majority Op. at 6.

The majority also relies on the Commission's policy statements in other provisions of the Guidelines to uncover their overarching purpose. *See* Majority Op. at 7–8 (quoting U.S.S.G. ch.1, pt. A, introductory cmt. 4(a)). Inasmuch as "[t]he best evidence of [the Commission's] purpose is the

---

[2] My colleagues appeared to acknowledge this fact during oral argument:

> [GOVERNMENT COUNSEL]: And I would counter that, Your Honor, with the fact that Chapter 7 does not set forth the same sorts of strictures and rules that are found in Chapter 5, in the original sentencing context, . . .

> JUDGE TATEL: Okay. We know that. We know that.

> JUDGE EDWARDS: Right.

> JUDGE TATEL: We understand that. Your point about that is well-taken.

Transcript of Oral Argument at 24, *United States v. Turner* (No. 21-3005).

[provision's] text," *West Virginia Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 98 (1991) (discussing evidence of the Congress's purpose in statutory text), I read the plain text of Chapter 7 and conclude that the Commission did not adopt a "total punishment" model for Chapter 7, as it did for Chapter 5. The most natural reading of the former is to apply the advisory ranges in Chapter 7's Revocation Table to each *term* of supervised release being revoked.

Finally, the majority turns to our circuit's case law, positing that "our court has repeatedly assumed that violations of supervised release should be punished only once, not separately for each count of a defendant's prior conviction." Majority Op. at 10. It cites for this proposition *In re Sealed Case*, 527 F.3d 188 (D.C. Cir. 2008). The defendant there was "on supervised release for a two-count conviction," Majority Op. at 10, and "committed several violations of his release conditions," *In re Sealed Case*, 527 F.3d at 192. But nothing in that case indicates that the defendant was serving multiple *terms* of supervised release or that we considered the district court's sentencing upon the revocation of multiple *terms* of supervised release, *see id.* at 189 (defendant was sentenced "to time served and five years of supervised release"); *id.* at 195 (Kavanaugh, J., dissenting) ("defendant had repeatedly violated his supervised release"). Thus, the circumstances in *In re Sealed Case* do not mirror Turner's and I can glean little, if anything, that guides us in our approach to the revocation of his terms of supervised release. Likewise, *United States v. Agramonte*, 276 F.3d 594 (D.C. Cir. 2001), is of scant help here because it examined an *Apprendi* challenge to the defendant's convictions, not a sentence upon revocation of supervised release. Instead, I find that our colleagues on the Fifth Circuit got it right when, considering similar circumstances, they found no error with an aggregate revocation sentence that exceeded the advisory range because each individual

revocation sentence fell within the range. *See United States v. Badgett*, 957 F.3d 536, 539 (5th Cir. 2020) (upon revocation of six concurrent terms of supervised release, district court sentenced defendant "to eight months on each term of supervised release—the middle of his five-to-eleven-month Guidelines range," which "were to run consecutively, for a total of 48 months' imprisonment"); *id.* at 541 n.20 ("Where the district court exercises its discretion to impose consecutive revocation sentences and each 'sentence falls within the advisory range and is consistent with the Guidelines' policy regarding consecutive sentences,' the aggregate sentence 'is entitled to a presumption of reasonableness.'" (citation omitted)).

The plain text and structure of the relevant Sentencing Guidelines provisions lead me to conclude that the district court properly calculated the Guidelines range when it sentenced Turner to consecutive nine-month terms of imprisonment upon revocation of both terms of supervised release. For the foregoing reasons, I respectfully dissent.