**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-4131

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

TROY GEORGE SKINNER,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond.  M. Hannah Lauck, District Judge.  (3:19-cr-00019-MHL-1)

Argued:  March 8, 2023                                           Decided:  June 8, 2023

Before GREGORY, Chief Judge, NIEMEYER, and RICHARDSON, Circuit Judges.

Affirmed by published per curiam opinion.

**ARGUED:**  Laura Jill Koenig, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Richmond, Virginia, for Appellant.  Jacqueline Romy Bechara, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Geremy C. Kamens, Federal Public Defender, Frances H. Pratt, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia; Robert J. Wagner, ROBERT J. WAGNER, PLC, Richmond, Virginia, for Appellant.  Jessica D. Aber, United States Attorney, Brian R. Hood, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

PER CURIAM:

Troy George Skinner, a citizen and resident of New Zealand, carried on an online relationship with a thirteen-year-old girl in Virginia that involved several sexually explicit video calls. After law enforcement discovered numerous images and video recordings from those calls on Skinner's cell phone and computer, a federal grand jury charged Skinner with nine counts of producing child pornography in violation of 18 U.S.C. § 2251(a). He entered a conditional guilty plea to one of the counts and was sentenced to twenty-one years in prison.

Skinner challenges both his conviction and sentence on appeal. He first argues that his conviction involves an impermissible extraterritorial application of § 2251(a) because he was in New Zealand when the unlawful images and videos were produced. Second, he contends that his conviction violates the Fifth Amendment Due Process Clause because he lacked adequate notice that the victim was underage. Third, and finally, he challenges his sentence on the grounds that the district court improperly applied a two-level enhancement for offenses involving "sexual contact." Finding no error, we affirm Skinner's conviction and sentence.

I.

A.

In December 2017, Skinner began communicating with a girl identified as "R.D." on Steam, an online gaming and messaging platform. At the time, R.D. was thirteen years old and lived in Goochland, Virginia, and Skinner was twenty-four and lived in New

2

Zealand. Skinner and R.D. soon moved their conversations to another online platform, Discord, which allows users to exchange typed messages and participate in live-streamed video calls on their computers and cell phones.

During their early online conversations, Skinner truthfully told R.D. that he was twenty-four, and R.D. falsely claimed that she was sixteen. R.D. also mentioned that she was home-schooled. In messages exchanged on January 7, 2018, Skinner told R.D. he wanted to be her boyfriend, to which R.D. responded: "You wouldn't mind being called a pedo?" J.A. 635. In another exchange the same day, they discussed the age of consent in the United States and New Zealand. R.D. wrote that she was "legally a kid" because she was under eighteen and that, in the United States, "[y]ou can't be with a minor if you're over 21 I think." J.A. 635–36. Skinner responded that the age of consent in New Zealand is sixteen. R.D. replied, "You'd get thrown in jail if it was here." J.A. 636.

Skinner and R.D.'s online interactions turned sexual in early January 2018. In addition to exchanging nude photographs of each other, they began having online sex during live video calls using their computers. During those calls, Skinner and R.D. each displayed their genitalia, touched themselves in suggestive ways, and masturbated on camera. Without R.D.'s knowledge or consent, Skinner captured several screenshots and video recordings of R.D. engaging in sexually explicit activity during those calls. At all relevant times, Skinner was in New Zealand and R.D. was in Virginia.

In June 2018, R.D. ended her online relationship with Skinner and cut off all communications with him. Later that month, Skinner traveled from New Zealand to Goochland, Virginia. En route to R.D.'s house, Skinner stopped at a local Wal-Mart, where

3

he purchased duct tape, a folding pocketknife, and pepper spray.  When Skinner arrived at the house, R.D.'s mother refused to allow him inside, at which point he tried to forcibly enter the home by breaking through a glass door.  After warning Skinner several times to leave, R.D.'s mother fired a handgun at Skinner, wounding him in the neck.  Local police officers arrived on the scene shortly thereafter and arrested Skinner.  In addition to the duct tape, pocketknife, and pepper spray, police seized two cell phones from his person.  Forensic examination showed that the phones had been used to access Google Mail accounts that contained pornographic images and videos of R.D.

In cooperation with U.S. authorities, law enforcement in New Zealand later seized a laptop from Skinner's apartment.  Forensic analysis of the laptop uncovered 120 video and 56 image files, most of which depicted child pornography involving R.D.

B.

In a September 2019 superseding indictment, a federal grand jury in the Eastern District of Virginia charged Skinner with nine counts of producing child pornography (18 U.S.C. § 2251(a)), one count of kidnapping and attempted kidnapping of a minor (18 U.S.C. §§ 1201(a)(1), (d), and (g)), and one count of kidnapping and attempted kidnapping (18 U.S.C. §§ 1201(a)(1) and (d)).

In three separate motions, Skinner moved to dismiss the superseding indictment. He raised several challenges to the indictment, two of which are relevant to this appeal. First, he sought to dismiss the production-of-child-pornography counts for lack of subject matter jurisdiction, arguing that § 2251(a) does not apply extraterritorially to cover his conduct in New Zealand.  Second, he argued the production-of-child-pornography counts

4

violated his due process rights. He maintained that because he never had direct, in-person contact with R.D., it was unconstitutional to subject him to § 2251(a)'s strict liability standard regarding a minor's underage status, and that he was at least entitled to a reasonable-mistake-of-age defense.

The district court denied Skinner's motions to dismiss. *See United States v. Skinner*, 536 F. Supp. 3d 23 (E.D. Va. 2021). It first held that § 2251(a) applies to extraterritorial conduct and, even if it did not, that Skinner's case represents a permissible domestic application of the statute. *Id.* at 31. The court also rejected Skinner's argument that the § 2251(a) charges violated the Due Process Clause because he had no way of knowing that R.D. was underage. *Id.* at 45. It noted that the Fourth Circuit has held that § 2251(a) does not require proof that the defendant knew the victim was underage, *United States v. Malloy*, 568 F.3d 166, 171 (4th Cir. 2009), and that the Supreme Court has endorsed the same position in dicta, *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72 n.2 (1994). In light of those decisions, the district court concluded that "a mistake of age defense is not mandated by the Constitution." *Skinner*, 536 F. Supp. 3d at 48. The court was also unpersuaded by Skinner's argument that the severity of the fifteen-year mandatory minimum sentence for a § 2251(a) offense made it a due process violation to convict him without proving that he knew R.D. was underage. *Id.* at 49–50. And, in any event, the court found ample evidence in the record indicating that Skinner knew R.D. was no older than sixteen and legally underage in the United States. *Id.* at 48–50.

Skinner then entered a conditional guilty plea to one count of producing child pornography (Count 1 of the superseding indictment). Count 1 alleged that in January 2018,

Skinner knowingly used a minor in Virginia "to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct, and for the purpose of transmitting a live visual depiction of such conduct." J.A. 350. It specifically identified a video file that showed R.D. engaging in sexually explicit conduct during a live video call in January 2018. The plea agreement, which the district court accepted, permitted Skinner to appeal the court's rulings on his motions to dismiss, as well as the sentence the court imposed.

Skinner's sentencing hearing took place in February 2022. The Government objected to the fact that the presentence report ("PSR") did not apply the two-level Sentencing Guidelines enhancement for an offense involving "sexual contact." U.S.S.G. § 2G2.1(b)(2)(A). Agreeing with the Government, the district court concluded that the enhancement applied because R.D.'s masturbation during the video calls with Skinner met the statutory definition of "sexual contact." The enhancement increased Skinner's total offense level from 38 to 40. Based on this offense level and Skinner's criminal history category of I, the court held that the Guidelines range was 292 to 360 months' imprisonment. After considering the 18 U.S.C. § 3553(a) sentencing factors, the court imposed a downward variance sentence of 252 months (twenty-one years).

On the Government's motion, the district court dismissed the remaining ten counts of the superseding indictment. The court entered final judgment on February 18, 2022, and Skinner timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

6

## II.

When reviewing the denial of a defendant's motion to dismiss an indictment, we review the district court's legal conclusions de novo and its factual findings for clear error. *United States v. Pasquantino*, 305 F.3d 291, 294 (4th Cir. 2002). We also review de novo a sentencing court's application of an enhancement in the Sentencing Guidelines based on a specific offense characteristic. *United States v. Dugger*, 485 F.3d 236, 241 (4th Cir. 2007).

## III.

Skinner first argues that his conviction rests on an impermissible extraterritorial application of § 2251(a) because he was in New Zealand when he committed the offense. Whether a federal statute applies to conduct beyond the territorial boundaries of the United States "is a matter of statutory construction."[1] *United States v. Ayesh*, 702 F.3d 162, 166 (4th Cir. 2012). While "Congress has the authority to apply its laws, including criminal statutes, beyond the territorial boundaries of the United States," *id.* (citation omitted), the Supreme Court has long recognized a presumption that federal statutes do not apply extraterritorially, *see, e.g.*, *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 255 (2010). A criminal statute rebuts this presumption and extends to extraterritorial conduct "only if Congress clearly so provides." *United States v. Shibin*, 722 F.3d 233, 245 (4th Cir. 2013).

---

[1] Although Skinner frames the extraterritorial reach of a statute as a question of subject matter jurisdiction, the Supreme Court has clarified that it is a "merits question" that goes to "what conduct [the statute] prohibits." *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 254 (2010).

We follow a two-step framework to decide questions of extraterritoriality. "The first step asks whether the text of the relevant statute 'provides a clear indication of an extraterritorial application,' sufficient to rebut the presumption against extraterritoriality." *United States v. Harris*, 991 F.3d 552, 559 (4th Cir. 2021) (quoting *WesternGeCo LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129, 2136 (2018)). If the statute fails to rebut that presumption, we move to the second step, which "asks whether the case involves a [permissible] domestic application of the statute." *WesternGeCo*, 138 S. Ct. at 2136 (internal quotation marks omitted). Usually, it is "preferable" for courts to address the first step before proceeding to the second. *RJR Nabisco, Inc. v. European Cmty.*, 579 U.S. 325, 338 n.5 (2016).

## A.

Turning to the first step, § 2251(a) does not apply extraterritorially. Section 2251(a) does contain four references to "foreign commerce," but such references cannot rebut the presumption against extraterritoriality. *See United States v. Elbaz*, 52 F.4th 593, 602 (4th Cir. 2022). And the statute contains no other indications of extraterritorial application. In all relevant respects, § 2251(a) is no different than the wire-fraud statute we considered in *Elbaz*. Just as the wire-fraud statute "lacks any affirmative statutory instruction that it criminalizes purely extraterritorial conduct," *id.*, so too does § 2251(a).

In this regard, § 2251(a) is distinguishable from related statutes that expressly prohibit the extraterritorial production of child pornography. One such statute, § 2251(c), targets a defendant who "employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct *outside of the United States, its territories*

8

*or possessions*, for the purpose of producing any visual depiction of such conduct," if the defendant intends for the depiction to be transported or actually transports it to the United States. 18 U.S.C. § 2251(c) (emphasis added). Similarly, § 2260(a) criminalizes "[a] person who, *outside the United States*, employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct," with the intent that "the visual depiction will be imported or transmitted into the United States." 18 U.S.C. § 2260(a) (emphasis added). When viewed alongside these provisions, § 2251(a)'s silence on overseas conduct reinforces our conclusion that the statute does not rebut the presumption against extraterritoriality.

Thus, we must turn to the second step and ask whether this case involves a permissible domestic application of § 2251(a).

### B.

To determine whether a case involves a domestic application of a statute, we identify the "focus" of the statute and ask "whether the conduct relevant to that focus occurred in United States territory." *Id.* A statute's focus refers to "the object of the statute's solicitude—which can turn on the conduct, parties, or interests that it regulates or protects." *Id.* at 2138 (cleaned up). "If the conduct relevant to the statute's focus occurred within the United States, then the case involves a permissible domestic application" of the statute, "even if additional and related conduct occurred abroad." *Harris*, 991 F.3d at 559 (internal quotation marks omitted); *see RJR Nabisco*, 579 U.S. at 337.

9

We conclude that the focus of § 2251(a) is the production of a visual depiction of a minor engaged in sexually explicit conduct or the transmission of a live visual depiction of such conduct.  18 U.S.C. § 2251(a).  Skinner's conviction stands as a permissible domestic application of § 2251(a) because the conduct relevant to the statute's focus occurred in Virginia, where the visual depiction that forms the basis of Skinner's conviction was produced and transmitted.

1.

Our first task is to identify the focus of § 2251(a).  To do so, we look to the text and structure of the statute as well as any relevant legislative history.  As a textual matter, the statute's focus is found within its "substantive elements," which "primarily define the behavior that the statute calls a violation of federal law" and "describe 'the harm or evil the law seeks to prevent.'"  *Elbaz*, 52 F.4th at 603 (quoting *Torres v. Lynch*, 578 U.S. 452, 457 (2016) (cleaned up)).  A violation of § 2251(a) occurs when the defendant "employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct."[2]  18 U.S.C. § 2251(a).  Thus,

---

[2] In addition, § 2251(a) makes it unlawful to "transport[] any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in[] any sexually explicit conduct" for the purpose of producing a visual depiction or live video transmission of that conduct.  This provision is not at issue in this case.

The statute also has jurisdictional elements, which require the Government to prove either that the depiction (1) "was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any (Continued)

10

§ 2251(a) has two substantive elements relevant to Skinner's case:  (1) the defendant convinced a minor to engage in sexually explicit conduct (2) with the purpose of producing or transmitting a visual depiction of that conduct.

We conclude that § 2251(a)'s focus is the production or transmission of the visual depiction.  What sets § 2251(a) apart from related statutes is that it prohibits the *production* and *transmission* of a depiction of a child engaging in sexually explicit conduct.[3]  *See United States v. Palomino-Coronado*, 805 F.3d 127, 132–33 (4th Cir. 2015).  The sexually explicit conduct alone is not enough; there must be a depiction that is produced or transmitted.  *See id.*  That conduct is "the harm or evil the law seeks to prevent." *Elbaz*, 52 F.4th at 603.

This conclusion accords with this Court's recent decision in *United States v. Elbaz*. There, when determining the "focus" of the federal wire fraud statute at step two of the extraterritoriality analysis, we recognized that the statute has two substantive elements:  (1) the defendant devised or intended to devise a scheme or artifice to defraud, and (2) the defendant used a wire transmission to execute the scheme or artifice.  *Id.*; *see* 18 U.S.C. § 1343.  We concluded that "the focus of the wire-fraud statute is the use of a wire, not the

___

means, including by computer"; (2) was actually "transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed"; or (3) the defendant "knows or has reason to know that such visual depiction will be [so] transported or transmitted."  18 U.S.C. § 2251(a).  However, "jurisdictional elements are never the statute's 'focus.'" *Elbaz*, 52 F.4th at 603.

[3] For example, § 2422(b) prohibits convincing a minor to engage in criminal sexual activity and § 2252(a) prohibits selling, possessing, or distributing a visual depiction of a minor engaged in sexually explicit conduct.

11

scheme to defraud," because the "wire transmission itself is the actus reus that is punishable by federal law." *Elbaz*, 52 F.4th at 603 (internal quotation marks omitted). Even though a scheme to defraud is "a necessary element" of the offense, we determined it is not the focus of the statute because "it is not the essential conduct being criminalized." *Id.* at 604. The same logic applies to § 2251(a)'s substantive elements and supports treating the production or transmission of the depiction—the "essential conduct"—as the statute's focus.

The legislative history of § 2251(a) confirms that this is the statute's focus. As the district court below recognized, Congress has explained that § 2251(a) and related statutes protect children from coerced sexual activity and the continuing harm they suffer when depictions of that sexual activity are distributed, via internet or otherwise. *See Skinner*, 536 F. Supp. 3d at 40–41. The Senate Judiciary Committee Report on the Protection of Children Against Sexual Exploitation Act of 1977, which first introduced the offense for producing child pornography, stated that "the use of children as prostitutes or as the subjects of pornographic materials is very harmful to both the children and the society as a whole." S. Rep. No. 95-438, at 5 (1977).

Congressional reports and commentary on later amendments to § 2251(a) continue this refrain. In recent legislation amending § 2251(a) and related statutes, Congress explained that "[c]hild pornography is a permanent record of a child's abuse and the distribution of child pornography images revictimizes the child each time the image is viewed." Effective Child Pornography Prosecution Act of 2007, Pub. L. No. 110-358, 122 Stat. 4001. This legislative history leaves no doubt that the focus of § 2251(a) is the production or transmission of the visual depiction.

12

2.

Having identified the focus of § 2251(a), we next consider whether, in Skinner's case, "the conduct relevant to the statute's focus occurred within the United States." *Harris*, 991 F.3d at 559. We conclude that it did because R.D. was in Virginia when she participated in each of the sexually explicit video calls with Skinner.

Because the focus of the statute is on the production or transmission of the depiction, the fact that Skinner was in New Zealand when he participated in the video calls and made the recordings of R.D. does not prevent his case from qualifying as a domestic application of § 2251(a). As we noted in *Elbaz*, "[t]ransmission . . . occurs in at least two locations:" where something is sent and where it is received. 52 F.4th at 604. There, the fact that the wire transmissions traveled through the United States sufficed to make the defendant's conviction a permissible domestic application of the wire-fraud statute. *Id.* The same is true of the live transmission of a depiction that forms the basis of a § 2251(a) conviction. In these factual circumstances, the production of the depiction similarly involved actions in two locations: the use of R.D.'s computer camera to capture the depiction and Skinner's computer to record it. So ample conduct relevant to the statute's focus—the production and transmission of the visual depiction—occurred in Virginia, where R.D.'s computer was located.

Our decision in *Harris* is also instructive. There, the defendant was convicted of coercing a minor into illegal sexual activity in violation of 18 U.S.C. § 2422(b) after he used the internet to carry on a sexual relationship with a minor in Virginia. *Id.* at 554. Even though the defendant was stationed in Japan with the U.S. Navy for much of the online relationship, we concluded that his conviction involved a domestic application of § 2422(b).

13

*Id.* at 561. We explained that "[b]ecause § 2422(b)'s focus is on the coercion of children into sexual activity, the conduct relevant to the extraterritoriality analysis occurred in Virginia, where Harris's victim received his messages and was compelled to assent to his demands for sexual activity." *Id.* at 560. Here, too, Skinner's presence in New Zealand does not transform his case into an extraterritorial application when the conduct relevant to § 2251(a)'s focus originated in Virginia.

To be sure, the facts in *Harris* are somewhat different than those at issue here. Beyond the fact that *Harris* involved a different (though related) statute, the defendant there was in the United States when he sent some of the coercive messages to the victim. *See id.* But there is no reason to believe the result in *Harris* would have been any different had the defendant remained abroad during all of his communications with the victim. The Court's reasoning makes clear that the domestic-application inquiry turned on the place where the conduct relevant to the statute's focus occurred. According to the Court, the defendant's temporary presence in the United States "only bolstered" its holding that, because the victim was in Virginia during the relevant encounters, the case represented a domestic application of § 2422(b). *Id.*

Skinner raises two counterarguments, but neither is persuasive. First, he emphasizes that he was in New Zealand when he formed the requisite intent to produce and when he persuaded R.D. to participate in online sex, both of which are necessary elements of a § 2251(a) offense. But as we have discussed, the statute is primarily concerned with the production or transmission of the visual depiction. When the visual depiction is captured in

14

and transmitted from the United States, the domestic application analysis does not depend on the defendant's location in recording the depiction and receiving the transmission.

Second, at oral argument, Skinner contended that the relevant conduct occurred in New Zealand because Count 1 did not charge the live transmission of sexually explicit conduct, but rather named a specific video file he recorded during one of the calls with R.D. As an initial matter, we note that Skinner did not raise this particular argument in his opening brief, which ordinarily results in forfeiture of the issue. *See A Helping Hand, LLC v. Baltimore Cty.*, 515 F.3d 356, 369 (4th Cir. 2008). Even if we excused that forfeiture here, nothing in the superseding indictment raises any doubts that the conduct relevant to the statute's focus took place in Virginia. Contrary to Skinner's argument, Count 1 charged that Skinner acted both with "the purpose of producing visual depictions" of sexually explicit conduct *and* with "the purpose of transmitting a live visual depiction of such conduct." J.A. 21. The transmission involved both R.D.'s use of the webcam to transmit the sexually explicit conduct and Skinner's receipt of that depiction over the live video feed. *See Elbaz*, 52 F.4th at 604. So too the production here involved both R.D. capturing the sexually explicit conduct through her computer camera and Skinner recording that depiction on his computer. R.D.'s actions in Virginia—essential to the offense charged in Count 1—make Skinner's conviction a domestic application of § 2251(a).

At first glance, it might seem counterintuitive to classify Skinner's conviction as a domestic application of § 2251(a) when he was overseas at all times relevant to the offense. But, at bottom, this inquiry turns on where the conduct relevant to the statute's focus occurs. For § 2251(a), that conduct is the production or transmission of the visual depiction

15

of the minor victim.  Because R.D. was in Virginia at all times she captured and transmitted sexually explicit videos at Skinner's behest, his conviction involves a permissible domestic application of § 2251(a), even though "additional and related conduct occurred abroad." *Harris*, 991 F.3d at 559.

## IV.

Skinner next argues that his § 2251(a) prosecution violates the Fifth Amendment Due Process Clause because the statute does not require proof that he knew R.D. was a minor.  Because his sexual interactions with R.D. took place entirely online, Skinner asserts that he is at least entitled to raise a reasonable-mistake-of-age defense.  We disagree.

As a matter of statutory construction, we have held that "knowledge of the victim's age is neither an element of [a § 2251(a)] offense nor textually available as an affirmative defense." *Malloy*, 568 F.3d at 171.  In *Malloy*, we looked to the Supreme Court's decision in *X-Citement Video*, which endorsed the same position in dicta.  There, the Court held that 18 U.S.C. § 2252, which prohibits the interstate transportation, shipping, receipt, distribution, and reproduction of child pornography, requires proof that a defendant knew the materials depicted underage children.  513 U.S. at 78.  In reaching that result, the Court contrasted § 2252 with § 2251(a) and stated that "producers may be convicted under § 2251(a) without proof they had knowledge of age."  *Id.* at 76 n.5.  It observed that § 2251(a) resembles statutory rape offenses, and that the common-law presumption that criminal offenses contain a mens rea requirement "expressly excepted sex offenses, such as [statutory] rape, in which the victim's actual age was determinative despite defendant's

16

reasonable belief that the girl had reached [the] age of consent." *Id.* at 72 n.2 (internal quotation marks omitted). While this means that a mistake of age is not a valid defense, the Supreme Court recognized that it is appropriate to assign the risk of such mistakes to defendants because "the perpetrator confronts the underage victim personally and may reasonably be required to ascertain that victim's age." *Id.*

Given that the Supreme Court has approvingly linked § 2251(a) to this common-law rule, it is difficult to conclude that the statute violates due process by imposing strict liability with respect to the victim's age. Rather, this precedent signals that the statute is a constitutional exercise of Congress's "wide latitude . . . to declare an offense and to exclude elements of knowledge . . . from its definition." *Lambert v. California*, 355 U.S. 225, 228 (1957).

Although Skinner argues otherwise, the fact that a violation of § 2251(a) carries a fifteen-year mandatory minimum sentence does not give him a due process right to a reasonable-mistake-of-age defense. The severity of a penalty may assist courts in determining whether a criminal statute imposes a mens rea requirement, *see United States v. McCauley*, 983 F.3d 690, 696 (4th Cir. 2020), but we have already held that § 2251(a) does not require proof that the defendant was aware of the victim's age and thus does not permit a reasonable-mistake-of-age defense. Regardless of this Court's views on the fifteen-year mandatory minimum for § 2251(a) offenses, Congress has expressed its judgment that the sentence be imposed without requiring proof that a defendant knew the victim was underage. *See Malloy*, 568 F.3d at 171–72. Once a defendant has been convicted of a criminal offense, a mandatory minimum sentence generally is consistent with the Due Process Clause as long as "Congress had a rational basis for its choice of

17

penalties" and the punishment "is not based on an arbitrary distinction." *Chapman v. United States*, 500 U.S. 453, 465 (1991). Skinner does not claim that his sentence runs afoul of these basic requirements.

Instead, Skinner asserts that he cannot be constitutionally convicted under § 2251(a) because, with all of his sexual encounters with R.D. taking place online, he never had the opportunity to "confront[] the underage victim personally." *X-Citement Video*, 513 U.S. at 72 n.2. But as the district court observed, the Supreme Court was not establishing a constitutional limitation on § 2251(a) prosecutions when it made this statement in *X-Citement Video*. *See Skinner*, 536 F. Supp. 3d at 48. While there might be some due process limits to imposing criminal liability under § 2251(a) without proving knowledge of age, Skinner's case does not implicate them. Skinner had ample opportunities to confront R.D. and ascertain her age during their online interactions. R.D. told Skinner she was sixteen, which, even if it had been true, made her underage in the United States. On multiple occasions, R.D. sent Skinner messages clearly indicating that the age of consent in the United States is eighteen, and other messages show Skinner was aware that a sexual relationship with someone under eighteen is illegal in the United States. Some messages R.D. sent to Skinner referred to him as a "pedo"; he admitted "im a creep"; and R.D. told him "[y]ou'd get thrown in jail if it was here." J.A. 636. In one recorded conversation, R.D. and Skinner even discussed a Virginia criminal statute that prohibits certain adults from having sexual contact with children under eighteen. J.A. 640–41. Yet despite these many indications that his conduct was illegal, Skinner persuaded R.D. to perform sexually explicit acts during video calls, which themselves provided clear opportunities for him to

18

recognize that R.D. was underage.[4]  On these facts, Skinner can hardly claim that he lacked

the ability to ascertain R.D.'s age simply because their encounters took place on a computer

screen rather than in person.

For these reasons, the district court correctly rejected Skinner's due process

challenge to the § 2251(a) charges in the superseding indictment.

V.

Lastly, Skinner argues that the district court erred by applying the two-level

sentence enhancement for an offense that involves "the commission of . . . sexual contact,"

U.S.S.G. § 2G2.1(b)(2)(A), because masturbation during a video call does not satisfy this

specific offense characteristic.  His argument is unavailing.

Courts "interpret the Sentencing Guidelines according to the ordinary rules of

statutory construction" and "give a guideline its plain meaning, as determined by

examination of its language, structure, and purpose."  *United States v. Strieper*, 666 F.3d

288, 293–94 (4th Cir. 2012) (internal quotation marks omitted).  We begin with the text of

the enhancement.  An application note to § 2G2.1 states that "sexual contact" "has the

meaning given that term in 18 U.S.C. § 2246(3)."  U.S.S.G. § 2G2.1, cmt. n.2.  That statute

defines "sexual contact" as "the intentional touching, either directly or through the

---

[4] The district court made a factual finding that in at least some of the videos, R.D. was not wearing makeup and "appears younger" than sixteen.  J.A. 637 n.8; *see also* J.A. 422 ("I've seen a number of the videos, and I can say that in some videos, she might be 16, but in some she is clearly not.").  Skinner does not argue that these findings were clearly erroneous.  Even if a reasonable-mistake-of-age defense were available, these findings would undermine Skinner's claim that he believed R.D. was not underage because the age of consent in New Zealand is sixteen.

clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(3).

The district court held that this definition, by covering "the intentional touching . . . of *any person*," covers R.D.'s masturbation during the video calls. However, we do not need to reach that issue, because the term "sexual contact" plainly covers Skinner's on-camera masturbation during the live video calls with R.D. For one, "the intentional touching . . . of *any* person" is broad enough to cover a defendant's self-touching. As some of our sister circuits have recognized, "[t]he statute's operative phrase 'any person' applies to all persons, including [the defendant] himself." *United States v. Aldrich*, 566 F.3d 976, 979 (11th Cir. 2009); *see also United States v. Raiburn*, 20 F.4th 416, 424 (8th Cir. 2021) (same); *United States v. Pawlowski*, 682 F.3d 205, 212 (3d Cir. 2012) (same). Such conduct also satisfies the second half of the "sexual contact" definition when the defendant masturbates "with an intent to . . . arouse or gratify the sexual desire of any person" (that is, either the victim or the defendant himself). Here, Skinner admitted, as part of his plea agreement, that he masturbated during the live video sessions with R.D., and there is no question that he did so with the requisite intent. Further, Skinner offers no persuasive reason why otherwise qualifying contact would fail to satisfy the definition when it occurs during a video call rather than a physical encounter.

The definition of "sexual act," another specific offense characteristic in § 2G2.1(b), reinforces our interpretation of "sexual contact." Whereas "sexual contact" involves the "intentional touching . . . of any person," a "sexual act" is defined in part as "the intentional

20

touching, not through the clothing, of the genitalia *of another person*." 18 U.S.C. § 2246(2)(D) (emphasis added). The reference to "another person" "clearly requires at least two individuals to be involved in the act." *United States v. Shafer*, 573 F.3d 267, 273 (6th Cir. 2009). Congress's decision to use the broader phrase "any person" in the definition of "sexual contact" suggests it intended for that term to cover self-touching.

Skinner points out that the definition of "sexually explicit conduct" expressly includes "masturbation," 18 U.S.C. § 2256(2)(A)(iii), and he argues that the absence of similar language in the definition of "sexual contact" indicates that Congress meant for that term to exclude masturbation.[5] This argument has some appeal, but we are unconvinced that it can override the plain meaning of the "sexual contact" definition, which is broad enough to cover a defendant's masturbation. The definition of "sexually explicit conduct" includes a specific list of covered acts in addition to masturbation; the fact that an act is expressly mentioned in that definition does not mean that it cannot also qualify as "sexual

---

[5] The term "sexually explicit conduct" is part of a two-level enhancement that applies when the "offense involved . . . the use of a computer or an interactive computer service to (i) persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage in sexually explicit conduct, or to otherwise solicit participation by a minor in such conduct; or (ii) solicit participation with a minor in sexually explicit conduct," "for the purpose of producing sexually explicit material or for the purpose of transmitting such material live." U.S.S.G. § 2G2.1(b)(6). The PSR applied this enhancement when calculating Skinner's offense level, and Skinner did not object.

While Skinner's conduct clearly satisfied the use-of-computer enhancement, that enhancement is not duplicative of the "sexual contact" enhancement. The former does not require that any "sexually explicit conduct" actually occur; it applies as soon as a defendant uses a computer to solicit a minor's participation in such conduct or encourages the minor to travel for that purpose. *See, e.g.*, *United States v. Zagorski*, 807 F.3d 291, 294 (D.C. Cir. 2015). A defendant receives the additional two-level enhancement for "sexual contact" only when an encounter occurs and involves some qualifying form of touching.

contact." For example, there is no question that "sexual intercourse," which is another enumerated form of "sexually explicit conduct," constitutes "sexual contact" as well. The same is true of masturbation.

Finally, Skinner asks us to apply the rule of lenity and construe the definition of "sexual contact" in his favor. While the rule of lenity is an important tool of statutory construction, it applies only when we diagnose an ambiguity in a criminal statute. *United States v. Campbell*, 22 F.4th 438, 446 (4th Cir. 2022). Given that the "sexual contact" enhancement unambiguously covers Skinner's conduct, the rule of lenity is not applicable.

Because Skinner admitted to masturbating during the video calls with R.D., we hold that it was appropriate for the sentencing court to apply the two-level enhancement for an offense involving "sexual contact."

## VI.

For the reasons stated in this opinion, the district court did not err by denying Skinner's motions to dismiss the indictment or applying the two-level "sexual contact" enhancement at sentencing. Skinner's conviction and sentence are therefore

*AFFIRMED.*