# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued December 15, 2023          Decided June 7, 2024

No. 23-3005

UNITED STATES OF AMERICA,
APPELLEE

v.

TROY SARGENT,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:21-cr-00258-1)

———

*Judith Mizner*, Assistant Federal Public Defender, argued the cause and filed the briefs for appellant.

*Eric Hansford*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Chrisellen R. Kolb*, *Nicholas P. Coleman*, and *Michael J. Romano*, Assistant U.S. Attorneys.

Before: MILLETT, WILKINS and GARCIA, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* WILKINS.

WILKINS, *Circuit Judge*: On January 6, 2021, Appellant Troy Sargent joined the throngs outside the U.S. Capitol to protest the certification of the 2020 election results. While there, he smacked a U.S. Capitol Police officer in the head and then tried to do it again after explicitly being ordered not to. In connection with this conduct, Sargent was charged with assaulting, resisting, or impeding law enforcement officers in violation of 18 U.S.C. § 111(a)(1). Sargent pleaded guilty and the District Court sentenced him according to the U.S. Sentencing Guidelines ("the Guidelines"). To do so, however, the District Court had to determine which of two guidelines assigned to Section 111 convictions by the Statutory Index ("the Index") to the Guidelines was "most appropriate for the offense conduct charged[:]" § 2A2.2, which applies to aggravated assaults, or § 2A2.4, which applies to obstructing or impeding officers. U.S. SENT'G GUIDELINES MANUAL §§ 1B1.2 cmt. n.1, 2A2.2, 2A2.4 (U.S. SENT'G COMM'N 2021); *see id.* § 1B1.2(a).

The District Court determined § 2A2.2 was most applicable to Sargent's conduct. To make this selection, the District Court relied on the commentary to § 2A2.2, which designates "felonious assault that involve[s] . . . an intent to commit another felony" as a qualifying "aggravated assault." *Id.* § 2A2.2 cmt. n.1. Notably, § 2A2.2 carries a higher base offense level than § 2A2.4.

Sargent appeals to vacate his Section 111 sentence. On his read, § 2A2.4, rather than § 2A2.2, was the guideline most applicable to his conduct, which he argues does not fall within the plain meaning of "aggravated assault" in the guideline text of § 2A2.2. In support, Sargent relies on the Supreme Court's decision in *Kisor v. Wilkie*, which held that courts may apply *Auer* deference to agency interpretations of their own regulations only if the regulation is genuinely ambiguous after

applying "all the standard tools of interpretation." 588 U.S. 558, 573 (2019). Urging application of *Kisor* to the Guidelines and commentary, Sargent argues that his conduct unambiguously falls outside the § 2A2.2 definition of "aggravated assault" and that the District Court erred in relying on the commentary to conclude otherwise.

For the reasons set forth below, we conclude that the District Court was correct to apply § 2A2.2. We need not address the degree of deference to afford the commentary to the Guidelines writ large because the plain meaning of "aggravated assault," according to the text, structure, and context of the Guidelines, unambiguously captures Sargent's conduct. Accordingly, we affirm.

**I.**

**A.**

**i.**

The Sentencing Reform Act of 1984 ("the Act") created the Sentencing Commission ("the Commission"), which is charged by statute with "establish[ing the] sentencing policies and practices for the Federal criminal justice system." 28 U.S.C. § 991(b)(1). In order to establish these policies and practices, the Commission promulgates "guidelines . . . for use of a sentencing court in determining the sentence to be imposed in a criminal case" and "general policy statements regarding application of the guidelines or any other aspect of sentencing or sentence implementation that in the view of the Commission would further the purposes set forth in [18 U.S.C. § 3553(a)(2).]" 28 U.S.C. § 994(a)(1)–(2). Although it is an agency within the judicial branch, and so outside the purview of the Administrative Procedure Act ("APA"), the Commission is subject, with regard to proposed

sentencing guidelines and amendments, to the provisions of the APA that relate to publication in the Federal Register and public hearing procedure. *Id.* § 994(x). Beyond these requirements, amendments to the Guidelines are promulgated through submission to Congress for a six-month period of review, during which period Congress can modify or disapprove them. *Id.* § 994(p).

The Commission also publishes commentary to accompany the Guidelines. While the Commission is not directly required to promulgate commentary, courts are directed by statute to consider it when applying the Guidelines. *See* 18 U.S.C. § 3553(b) ("In determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission."). The Guidelines themselves additionally provide that "[t]he Commentary that accompanies the guideline sections . . . may interpret the guideline or explain how it is to be applied" and that "[f]ailure to follow such commentary could constitute an incorrect application of the guidelines, subjecting the sentence to possible reversal on appeal." U.S. SENT'G GUIDELINES MANUAL § 1B1.7 (U.S. SENT'G COMM'N 2021) (citing 18 U.S.C. § 3742).

While "[t]he Commission may promulgate commentary . . . and amendments thereto[] without regard to" the APA, it nevertheless "endeavor[s] to provide, to the extent practicable, comparable opportunities for public input on proposed . . . commentary considered in conjunction with guidelines amendments." U.S. SENT'G COMM'N, RULES OF PRACTICE & PROCEDURE § 4.3 (2016). Similarly, the Commission, again "to the extent practicable," "endeavor[s] to include amendments to . . . commentary in any submission of guideline amendments to Congress[.]" *Id.* § 4.1. In accordance with these policies, as an example, the Commission submitted

amendments to the commentary along with the November 2023 Guidelines amendments for notice-and-comment. *See* Notice of Submission and Request for Comment, Sentencing Guidelines for United States Courts, 88 Fed. Reg. 28254 (May 3, 2023); *cf.* Notice and Request for Public Comment, Sentencing Guidelines for United States Courts, 88 Fed. Reg. 89142 (Dec. 26, 2023); Notice and Request for Public Comment, Sentencing Guidelines for United States Courts, 88 Fed. Reg. 7180 (Feb. 2, 2023). Thus, ordinarily and in practice, the commentary undergoes the same congressional and public review as the Guidelines.

For the purposes of judicial review, the Supreme Court has directed that the Guidelines should be treated as "the equivalent of legislative rules adopted by federal agencies" because "[t]he Sentencing Commission promulgates the [G]uidelines by virtue of an express congressional delegation of authority for rulemaking[.]" *Stinson v. United States*, 508 U.S. 36, 44–45 (1993). Extending this analogy, the Supreme Court has also directed that the commentary should be treated like "an agency's interpretation of its own regulations" and, as long as the commentary "does not violate the Constitution or a federal statute," must be "given 'controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" *Id.* at 45 (quoting *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945)).

At the same time, the differences between agency regulations and the Guidelines have grown dramatically since *Stinson* was decided. In 2005, the Supreme Court invalidated two provisions of the Act that previously made the Guidelines mandatory on the courts. *See United States v. Booker*, 543 U.S. 220, 227 (2005). Following *Booker*, agency regulations retain the force of law but the Guidelines do not—making *Stinson*'s acknowledgement that "the analogy [between the commentary

and an agency's interpretation of its own legislative rule] is not precise" all the more important now. *Stinson*, 508 U.S. at 44.

**ii.**

When sentencing, courts consider the "kinds of sentence[s] and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the [G]uidelines[.]" 18 U.S.C. § 3553(a)(4). In order to identify the sentencing range, courts first select the guideline that applies to the relevant offense using the Index pursuant to § 1B1.2. *See* U.S. SENT'G GUIDELINES MANUAL § 1B1.1(a)(1) (U.S. SENT'G COMM'N 2021); *United States v. McKeever*, 824 F.3d 1113, 1121 (D.C. Cir. 2016). Using the appropriate guideline for the offense, courts next determine the base offense level and apply any appropriate specific offense characteristics. *See* U.S. SENT'G GUIDELINES MANUAL § 1B1.1(a)(2) (U.S. SENT'G COMM'N 2021). Courts then adjust the offense level for particular circumstances, like victim, role, obstruction of justice, or acceptance of responsibility, in order to reach a total offense level before adding the relevant criminal history category to determine the advisory sentencing range. *Id.* §§ 1B1.1(a)(3), (5)–(6), (8).

The Index sometimes lists more than one guideline for a particular criminal offense. When that happens, courts are directed to use the guideline "most appropriate for the offense conduct charged in the count of which the defendant was convicted." *Id.* § 1B1.2 cmt. n.1. As relevant here, 18 U.S.C. § 111(a)(1) punishes with up to eight years of imprisonment anyone who:

> [F]orcibly assaults, resists, opposes, impedes, intimidates, or interferes with any [law enforcement officer] . . . while engaged in or on

account of the performance of official duties . . . where such acts involve physical contact with the victim of that assault or the intent to commit another felony[.]

18 U.S.C. § 111(a). The Index lists both § 2A2.2 and § 2A2.4 as applicable guidelines for Section 111. Section 2A2.2 applies to "[a]ggravated [a]ssault[s]" and carries a base offense level of 14, with level increases where the assault involved "more than minimal planning," use of a firearm or dangerous weapon, or varying degrees of bodily injury. U.S. SENT'G GUIDELINES MANUAL § 2A2.2 (U.S. SENT'G COMM'N 2021). The § 2A2.2 commentary defines "aggravated assault" as "felonious assault that involved (A) a dangerous weapon with intent to cause bodily injury (*i.e.*, not merely to frighten) with that weapon; (B) serious bodily injury; (C) strangling, suffocating, or attempting to strangle or suffocate; or (D) an intent to commit another felony." *Id.* § 2A2.2 cmt. n.1. Section 2A2.4, by contrast, applies to conduct that involves "[o]bstructing or [i]mpeding [o]fficers" and carries a base offense level of 10, with level increases based on physical contact, dangerous weapons, or bodily injury. *Id.* § 2A2.4(a)–(b). Additionally, § 2A2.4(c) instructs that § 2A2.2 should be applied "[i]f the conduct constituted aggravated assault[.]" *Id.* § 2A2.4(c)(1).

**B.**

**i.**

On January 6, 2021, Sargent participated in the riot at the Capitol building. On that day, he scaled a media tower, filmed multiple videos of himself boasting about his involvement in the assault, and then, ultimately, approached a faltering line of U.S. Capitol Police officers on the West Plaza of the Capitol building and smacked an officer in the head. In response, another officer immediately instructed Sargent and others: "Do

not start attacking people." Ignoring this order almost immediately, Sargent then swung his open hand towards the same officer but, thankfully, missed. Following this altercation, Sargent retreated into the crowd and left the riot.

Sargent's subsequent Facebook messages revealed that he had intended to strike the same officer twice and, indeed, thought he had. In Facebook messages after January 6, he reported to an online message group, "After I seen . . . [the police] throwing them flash grenades into the crowd I had to get off the ladder and go get me some." A. 14. In another post-riot message, he explained, "I got two hits in on the same rookie cop and then he maced me," and continued, "yeah every time he came in his visor was all full of [mace so] I knew [he] couldn't see s*** so I just jumped out from behind somebody [and] punched him as hard as I could [right] in his [visor]." *Id.* (alterations in original). Further still, Sargent told others that he "[p]unched the cop 3 times in their [visor]" and that he "Duff that cop out twice." *Id.*

**ii.**

In connection with this conduct, Sargent was charged with six counts, including both assaulting, resisting, or impeding certain officers in violation of 18 U.S.C. § 111(a)(1), which is the centerpiece of this appeal, and civil disorder in violation of 18 U.S.C. § 231(a)(3), which is a felony. He pleaded guilty to all counts.

At sentencing, the District Court applied § 2A2.2 to Sargent's Section 111 conviction over his objection. There, as here, Sargent argued that *Kisor* required a finding that § 2A2.4 was the most applicable guideline, which in turn meant that his advisory sentencing range should have been 8–14 months. Responding to Sargent's objection, the District Court relied on *Stinson* to conclude that the "definition of aggravated assault

found in the commentary is appropriate under [§] 2A2.2," reasoning further that "the commentary has to be given appropriate weight and is not overruled by *Kisor*." *Id.* at 120. Assessing Sargent's conduct directly, the District Court then found Sargent's assault was "not . . . just the obstruction of a police officer[.]" *Id.* at 122. Instead, "[his] statements prior to coming down to the riot," his "climbing up the . . . media tower . . . [and then] coming down and joining in [what he saw,]" "mov[ing] to the front of the line through a huge crowd[,]" "assault[ing] the police officer[,]" and then "later . . . tr[ying] to do it again" was evidence of intent to commit the separate felonious offense of engaging in civil unrest to interfere with the process of Congress approving the Electoral College vote. *Id.* Sargent's intent to commit that additional civil unrest felony qualified his conduct as an aggravated assault.

The District Court accordingly determined that the appropriate advisory sentencing range for Sargent's Section 111 conviction was 24 to 30 months. Upon consideration of the 18 U.S.C. § 3553(a) factors, however, the District Court applied a downward variance and sentenced Sargent to a term of 14 months, to be followed by 24 months of supervised release. Notably, the District Court's sentence matched the higher end of the range for which Sargent advocated.

## II.

Sargent now appeals to vacate this sentence, alleging that the § 2A2.2 commentary is not entitled to deference under *Kisor*. We review whether the District Court properly interpreted the Guidelines *de novo* as a question of law. *See United States v. Turner*, 21 F.4th 862, 865 (D.C. Cir. 2022) (reviewing district court calculation of the Guidelines range *de novo*); *United States v. Cooper*, 886 F.3d 146, 155 (D.C. Cir. 2018) (reviewing "purely legal" question of the "soundness of

the court's Guidelines interpretation" *de novo*). While the parties focused their arguments on whether the definition of "aggravated assault" in the § 2A2.2 commentary is entitled to deference under *Kisor*, we conclude that this case is best resolved on the narrower question of whether the term "aggravated assault" in the § 2A2.2 guideline text unambiguously applies to Sargent's conduct. As shown below, the text, structure, and context of the Guidelines reveal that the term "aggravated assault" in the § 2A2.2 guideline text unambiguously encompasses Sargent's actions on January 6, 2021. For this reason, we affirm.

**A.**

The "first step in interpreting" a guideline "is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). To do so, we "start with the text and structure of the Guidelines." *McKeever*, 824 F.3d at 1121; *see United States v. Skinner*, 70 F.4th 219, 230 (4th Cir. 2023) (per curiam) ("[Courts apply] the ordinary rules of statutory construction and give a guideline its plain meaning, as determined by examination of its language, structure, and purpose") (internal quotation marks omitted); *see also United States v. Brock*, 94 F.4th 39, 51 (D.C. Cir. 2024) (interpreting a guideline based on its "plain, natural, and ordinary meaning").

In this case, neither the relevant criminal statutes nor the guideline text of § 2A2.2 or § 2A2.4 provide a precise definition of the term "aggravated assault." The edition of Black's Law Dictionary in print at the time the Guidelines were first promulgated included two entries for "aggravated assault." One, nested under the definition for "assault," defined it as an assault "committed with the intention of committing some

additional crime; or one attended with circumstances of peculiar outrage or atrocity." *Assault*, *Aggravated Assault*, BLACK'S LAW DICTIONARY 105 (5th ed. 1979). The other, listed independently, provided this definition:

> A person is guilty of aggravated assault if he: attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; or, attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon.

*Aggravated Assault*, BLACK'S LAW DICTIONARY 60 (5th ed. 1979). "In all jurisdictions[,]" the entry continues, "statutes punish such aggravated assaults as assault with intent to murder (or rob or kill or rape) and assault with a dangerous (or deadly) weapon more severely than 'simple' assaults." *Id.* Today, the same publication defines "aggravated assault" as "criminal assault accompanied by circumstances that make it more severe, such as the intent to commit another crime or the intent to cause serious bodily injury." *Assault*, BLACK'S LAW DICTIONARY (11th ed. 2019). Together, these definitions, while indicative of potential contours for defining "aggravated assault," do not point to a single, unambiguous meaning.

That said, a provision may be "unambiguous without addressing every interpretive theory[;]" instead, "[i]t need only be 'plain to anyone reading'" that it "encompasses the conduct at issue." *Salinas v. United States*, 522 U.S. 52, 60 (1997) (quoting *Gregory v. Ashcroft*, 501 U.S. 452, 467 (1991)). Indeed, even if "[a] term may be ambiguous as applied to some situations," it may be unambiguous "as applied to others." *Ass'n of Battery Recyclers, Inc. v. U.S. Env't Prot. Agency*, 208 F.3d 1047, 1056 (D.C. Cir. 2000). This is why "the

12

plainness or ambiguity" of a guideline's text "is determined by reference [not only] to the language itself," but also to "the specific context in which that language is used[] and the broader context of [the guideline] as a whole." *Robinson*, 519 U.S. at 341. "A provision that may seem ambiguous in isolation is often clarified by the remainder of the . . . scheme" because "only one of the permissible meanings produces a substantive effect that is comparable with the rest of the law." *King v. Burwell*, 576 U.S. 473, 492 (2015) (quoting *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988)). In light of these principles, "[o]ur inquiry 'must cease'" if the relevant language is "unambiguous" and the "'scheme is coherent and consistent.'" *Robinson*, 519 U.S. at 340 (quoting *United States v. Ron Pair Enter., Inc.*, 489 U.S. 235, 240 (1989)).

Notwithstanding whatever ambiguity the § 2A2.2 guideline text may present in isolation, the text, structure, and context of the Guidelines, taken together, supply the clarity necessary to show that § 2A2.2 unambiguously encompasses the conduct at issue here. The Guidelines instruct sentencing courts to "[r]efer to the Statutory Index . . . to determine" the applicable guideline for an offense. U.S. SENT'G GUIDELINES MANUAL § 1B1.2(a) (U.S. SENT'G COMM'N 2021). The Index is therefore part of the "text and structure of the Guidelines," *see McKeever*, 824 F.3d at 1121, and courts must faithfully apply it when calculating the guidelines range, 18 U.S.C. § 3553(a)(4)(A); *see Gall v. United States*, 552 U.S. 38, 51 (2007) ("[I]mproperly calculating[] the Guidelines range" is a "significant procedural error[.]"). The Index makes clear that the intended heartland for § 2A2.2 was, and continues to be, offenses that involve assault with intent to commit another felony, assault with intent to cause injury, or assault that causes injury. Accordingly, § 2A2.2 unambiguously applies to, and

has always applied to, assaults with intent to commit another felony.

The structure of the initial versions of the Guidelines clearly demonstrates § 2A2.2 was designed to apply to offenses that involve assault with intent to commit any felony from the beginning. The original 1987 Guidelines provided three guidelines to cover all assaultive conduct: § 2A2.1, which dealt with assault with intent to commit murder, conspiracy or solicitation to commit murder, and attempted murder; § 2A2.2, which covered aggravated assault; and § 2A2.3, which covered minor assault. U.S. SENT'G GUIDELINES MANUAL, ch. 2, pt. A.2 (U.S. SENT'G COMM'N Oct. 1987). At that time, § 2A2.2 was one of multiple specified guidelines for 24 different criminal statutes, but stood alone as the sole specified guideline for only four offenses in the Index—18 U.S.C. §§ 113(b), 113(c), 113(f), and 114.[1] As now, the then-contemporary version of Section 113 concerned "[a]ssaults within maritime and territorial jurisdiction[.]" 18 U.S.C. § 113 (1982). Section 113(b) punished "[a]ssault with intent to commit any felony," Section 113(c) punished "[a]ssault with a dangerous weapon, with intent to do bodily harm, and without just cause or excuse," and Section 113(f) punished "[a]ssault resulting in serious bodily injury." *Id.* § 113(b), (c), (f). Section 114, meanwhile, concerned "[m]aiming within maritime and territorial jurisdiction" and applied where a person committed an assault by certain specified means "with intent to maim or disfigure." *Id.* § 114. Temporary amendments to the

---

[1] In 1987, § 2A2.2 was one of multiple guideline options for the following statutes: 16 U.S.C. §§ 1029, 1030, 1857(1)(E), 1857(1)(H), 1859, 2435(5), 2435(6), 2435(7), 2438; 18 U.S.C. §§ 32(b), 111, 112(a), 115(a), 115(b)(1), 351(e), 1153, 1751(e), 2116, 2118(c)(1), 2231; 21 U.S.C. § 675; 33 U.S.C. § 1232(b)(2); and 42 U.S.C. §§ 2000e-13, 2283(b). U.S. SENT'G GUIDELINES MANUAL, app. A (U.S. SENT'G COMM'N Oct. 1987).

Guidelines were adopted in January 1988 and June 1988. *See* Sentencing Guidelines for United States Courts, 53 Fed. Reg. 1286 (Jan. 15, 1988); Sentencing Guidelines for United States Courts, 53 Fed. Reg. 5104 (Feb. 19, 1988); Sentencing Guidelines for United States Courts, 53 Fed. Reg. 15530 (Apr. 29, 1988). The temporary amendments became permanent in October 1988 following submission to Congress for review. *See id.* In that revision to the Guidelines, while § 2A2.2 had grown to become one of the listed guidelines for 26 offenses, Congress did not disrupt the Commission's decision to leave § 2A2.2 as the only applicable guideline for the same four offenses it covered by itself in 1987.[2] U.S. SENT'G GUIDELINES MANUAL, app. A (U.S. SENT'G COMM'N Oct. 1988).

While the original province of § 2A2.2 goes a long way to confirm that the guideline was intended to cover assault with intent to commit another felony, later changes and revisions to the Guidelines bolster this conclusion. First, the contemporary Guidelines list § 2A2.2 as the only guideline applicable to violations of 18 U.S.C. § 113(b) that occurred prior to 1994. In 1994, Section 113(b) proscribed "[a]ssault with intent to commit any felony[.]" 18 U.S.C. § 113(b) (1988). Congress then moved Section 113(b) to Section 113(a)(2). The 2021 Guidelines provide that district courts should apply §§ 2A2.2, 2A3.2, 2A3.3, and 2A3.4 to a Section 113(a)(2) violation. The latter three guidelines all concern sexual assault. So for a non-sexual assault with intent to commit another felony, the Guidelines *require* district courts to apply § 2A2.2. Section 2A2.2's persistent coverage of assaults with intent to commit another felony strongly suggests that "aggravated assault" includes such assaults.

---

[2] By October 1988, § 2A2.2 had been added as a guideline option for 18 U.S.C. § 1501 and 26 U.S.C. § 7212(a). U.S. SENT'G GUIDELINES MANUAL, app. A (U.S. SENT'G COMM'N Oct. 1988).

The text, structure, and context of the Guidelines are equally clear that § 2A2.4 has historically applied and continues to apply to offenses where the primary issue is interference with law enforcement—a category of offense that is distinct from the core conduct toward which § 2A2.2 is geared. As explained above, §§ 2A2.1, 2A2.2, and 2A2.3 were the guidelines that applied to all assaults between 1987 and 1988. By October 1988, however, the Commission added § 2A2.4 to the "assault" category in an effort to "make the guidelines more comprehensive." U.S. SENT'G GUIDELINES MANUAL, app. C at 37–38 (U.S. SENT'G COMM'N Oct. 1988); *see id.* at ch. 2, pt. A.2. Then, as now, § 2A2.4 was designated for conduct that involved "[o]bstructing or [i]mpeding [o]fficers" and the two offenses for which § 2A2.4 was the sole guideline each involved just such conduct as a primary element. *Id.* § 2A2.4; app. A. One criminalized "knowingly and willfully obstruct[ing], resist[ing], or oppos[ing] an extradition agent . . . ." 18 U.S.C. § 1502 (1988). The other proscribed the same conduct vis-à-vis "a Federal law enforcement agent engaged in the performance of . . . protective functions[.]" *Id.* § 3056(d). By 2021, § 2A2.4 maintained the same position; it was the lone guideline applicable to over 30 different offenses and, of those offenses, none included an element involving intent to commit another felony, intent to cause bodily harm, or causing bodily harm.[3]

---

[3] In the November 2021 edition of the Guidelines, § 2A2.4 was the only guideline applicable to the following statutes: 16 U.S.C. §§ 773e(a)(2)–(4) & (a)(6), 773g, 973c(a)(8) & (a)(10)–(12), 973e, 1029, 1030, 1417(a)(5)–(6) & (b)(2), 1437(c), 1857(1)(D)–(F) & (1)(H), 1859, 2435(4)–(7), 2438, 3606, 3637(a)(2)–(4) & (a)(6), 5009(5)–(8), 5010(b); 18 U.S.C. §§ 758, 1502, 2237(a)(1) & (a)(2)(A), 3056(d); 26 U.S.C. § 7212(a); 30 U.S.C. §§ 1461(a)(3)–(5) & (a)(7), 1463; 33 U.S.C. § 1232(b)(2); and 42 U.S.C. §§ 9151(2)–(5), 9152(d).

As particularly applicable here, the Commission's decision to replace § 2A2.3 with § 2A2.4 for Section 111 offenses further confirms § 2A2.2's applicability to Sargent's conduct. Between 1987 and 1988, § 2A2.2 and § 2A2.3 applied to Section 111 offenses. U.S. SENT'G GUIDELINES MANUAL, app. A (U.S. SENT'G COMM'N Oct. 1988). As introduced, § 2A2.3 applied to "minor assault" offenses. U.S. SENT'G GUIDELINES MANUAL, ch. 2, pt. A.2 (U.S. SENT'G COMM'N Oct. 1987). At that time, § 2A2.3 was the sole guideline for five offenses, two of which were assaults, *see* 18 U.S.C. § 113(d)–(e) (1982), but three of which concerned refusal to permit an officer to board a vessel or resisting arrest, *see* 16 U.S.C. §§ 1857(1)(D), 1857(1)(F), 2435(4) (1982). As soon as § 2A2.4 was added in October 1988, it replaced § 2A2.3 as the second applicable guideline for Section 111 offenses and clearly instructed that § 2A2.2 should be applied "[i]f [a] defendant is convicted under 18 U.S.C. § 111 and the conduct constituted aggravated assault."[4] U.S. SENT'G GUIDELINES MANUAL, ch. 2, pt. A.2 (U.S. SENT'G COMM'N Oct. 1988). Meanwhile, § 2A2.3—which, again, applied to "minor assault" offenses—maintained a virtually identical footprint in the Guidelines; it remained the sole guideline for the three obstruction and resisting arrest charges. Indeed, it appears the only place where § 2A2.4 replaced § 2A2.3 was for Section 111. These intentional changes lay bare that § 2A2.4, as applied to Section 111, was supposed to do the same work § 2A2.3 had done previously—namely, apply to minor

---

[4] This language remained in place until November 1992, when the Commission removed the specific reference to Section 111 on the grounds that "the[] specific offense characteristics [should] apply . . . on the basis of the underlying conduct." U.S. SENT'G GUIDELINES MANUAL, app. C, amend. 443 (U.S. SENT'G COMM'N 2003).

assaults—while § 2A2.2 would be applied to assaults that were aggravated by other, separate factors.

In light of this structure and context, the Commission and, by virtue of the review structure, Congress have directly spoken to the question of whether § 2A2.2 should apply to the conduct at issue here—and their answer is yes.

**B.**

The arguments Sargent raises to urge a different result are each unavailing.

To start, Sargent argues, relying on the analogies *Stinson* draws between regulations, the Guidelines, and the commentary, that *Kisor* "appl[ies] to the sentencing guidelines" and, necessarily, the commentary. Appellant's Br. 8. Employing *Kisor*, Sargent next asserts that the District Court's deference to the commentary definition of "aggravated assault" was improper because the "guideline is not genuinely ambiguous." *Id*. But as described above, "aggravated assault" plainly captures Sargent's conduct here and that means any further inquiry "must cease." *Robinson*, 519 U.S. at 340.

As to the guideline text, Sargent posits that the term "aggravated assault" is unambiguously "limited to offenses involving deadly or dangerous weapons or bodily injury." Appellant's Br. 22. This argument fails for several reasons, two of which are particularly prominent. First, Sargent relies on the Model Penal Code, state statutes, non-contemporaneous dictionary definitions, and treatises to suggest that the "ordinary meaning" of the term "aggravated assault" unambiguously excludes assault with intent to commit another felony. Appellant's Br. 21. While "the 'judicial inquiry is complete'" where "the words of the [text] are unambiguous,"

*Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99 (2003) (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992)), the sources Sargent cites are insufficient to support a finding of unambiguousness that would give way to such finality. Indeed, as already mentioned, more relevant sources for textual interpretation, like entries in Black's Law Dictionary that were contemporaneous with the initial publication of the Guidelines, included "assault with intent to commit another crime" within the umbrella of acceptable definitions for "aggravated assault," directly refuting Sargent's proposed definition.

Second, Sargent's constrained construction of the guideline text ignores its context within the larger structure of the Guidelines, and so necessarily misses the clarity provided by "the remainder of the . . . scheme[.]" *Burwell*, 576 U.S. at 492. Opting instead to focus on the structure of Section 111, Sargent argues that the three tiers for punishment in the statute—(1) simple assault, (2) assault that involves physical contact or the intent to commit another felony, and (3) assault that involves use of a deadly weapon or inflicts bodily injury—and specifically the statutory scheme's bifurcation of the third tier, which carries a maximum penalty of twenty years, and the first two tiers, which carry significantly lower maximum penalties of one year and eight years, respectively, "support[] defining aggravated assault in the guidelines as not including an assault simply because it involved an intent to commit another felony." Appellant's Br. 22. On our read, this contention is not relevant to the text, structure, and context of § 2A2.2 specifically and is, thus, unpersuasive. Moreover, it is a weak point when raised against the now decades-long, congressionally-approved application of § 2A2.2 to offenses that include assault with intent to commit another felony.

\*\*\*\*\*

For the foregoing reasons, we affirm the District Court's sentence on Sargent's Section 111 conviction.

*So ordered.*